Mary SCOTT, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary
of Veterans Affairs, Appellee.

No. 91–463.

United States Court of Veterans Appeals.

Decided Oct. 9, 1992.

Mary Scott, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and R. Randall Campbell, were on the brief, for appellee.

Before KRAMER, IVERS and STEINBERG, Associate Judges.

IVERS, Associate Judge, filed the opinion of the Court. KRAMER, Associate Judge, filed a concurring opinion. STEINBERG, Associate Judge, filed a concurring opinion.

IVERS, Associate Judge:

Appellant, Mary Scott, appeals from a February 15, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied death pension benefits to her. The Board did not find appellant to be the surviving spouse of the deceased veteran, John Scogin. For the reasons set forth below, the Court vacates the BVA decision and remands the case to the Board for readjudication consistent with this opinion.

## I. BACKGROUND

John Scogin served in the United States Army from January 14, 1943, to December 8, 1945. The veteran was first married in January 1947 to Gladys Ayers Scogin. R. at 5. They separated on September 30, 1948. R. at 2. They were divorced in 1949. R. at 9. On March 1, 1965, the veteran married his second wife, Eunice Barns Scogin. R. at 102, 104. On October 31, 1973, the veteran filed with the Veterans' Administration (now Department of Veterans Affairs) (VA) an Income—Net Worth and Employment Statement (Income Statement). R. at 12–13. Although he was still married to Eunice Barns Scogin, the veteran described himself, on that form, as divorced, with no current wife. R. at 12. On February 13, 1974, a divorce decree was entered in the Circuit Court of Winston County,

Alabama, divorcing the veteran and Eunice Barns Scogin. R. at 80. On July 17, 1974, the veteran filed an Income Statement. R. at 14–15. This time, the veteran indicated on the form that he had never married, although he clearly had been married twice. R. at 14. On March 6, 1975, the veteran began receiving Social Security benefits. R. at 18. According to appellant, she began living with the veteran on January 3, 1976. R. at 104, 106. On February 9, 1976, the veteran filed another Income Statement. R. at 16–17. On that form, the veteran simply stated that he was divorced.

On April 24, 1978, the veteran listed appellant as the beneficiary of his life insurance policy. However, the veteran listed appellant as a "sister" not as a "spouse." R. at 74. The rating board, in a September 26, 1978, rating decision found appellant "unemployable," and granted him pension benefits. R. at 20. In a later letter, the veteran was informed that in order to receive his pension benefits, he had to fill out a Statement of Income and Net Worth for both himself and his wife, if he was married. R. at 21.

On October 19, 1978, the veteran filed his Income Statement and claimed he was divorced from a Eunice Riddle. R. at 27. (The Court is assuming that Eunice Riddle and Eunice Barns Scogin are the same person.) On November 6, 1978, the veteran was awarded pension benefits. R. at 29. Periodically, from January 15, 1979, through May 3, 1989, the veteran continued to file either a Statement of Income and Net Worth—Disability form or an Improved Pension Eligibility Verification Report in which he either did not provide any information regarding his marital status or stated that he was "not married." R. at 31, 35, 45, 49, 55, 60.

The veteran died on June 5, 1990. R. at 66. On June 18, 1990, VA received statements by Mittie Chandler, Roy Harris, and Malcom H. Boyles, a former VA employee, attesting to the common-law marriage of Mary Scott and the veteran. R. at 67, 69, 71. On June 18, 1990, appellant filed an application for death pension benefits. R. at 82–85.

On July 2, 1990, appellant filed a Statement of Marital Relationship (R. at 92–93) and Supporting Statements Regarding Marriage signed by Mary Ellen Riddle and Thelma H. Baxter. R. at 88–91. Mary Ellen Riddle claimed that she was appellant's daughter and the veteran's stepdaughter. R. at 88. (Later that month, appellant filed a statement in support of claim in which she stated that Mary Ellen Riddle was her daughter by her first husband, William Scott, and was the veteran's stepdaughter. R. at 104–05.) Thelma H. Baxter claimed to be appellant's and the veteran's niece. R. at 90.

On July 10, 1990, the veteran's brother, Virgil Scogin, filed an application with VA for burial benefits. In filling out the application, Virgil Scogin provided no spousal information except for marking "divorced" for the marital status of his brother. R. at 97–98. On July 20, 1990, appellant was awarded Retirement, Survivors and Disability Insurance by the Social Security Administration (SSA). R. at 99–100.

On July 27, 1990, VA sent a letter to appellant requesting additional information. R. at 102. In return, on July 31, 1990, appellant filed a Statement in Support of Claim, in which she clarified discrepancies regarding some dates and other matters that were evident in the letter from VA. R. at 104. On August 14, 1990, an Administrative Decision was made by VA Regional Office, determining that a common-law marriage did not exist between the deceased veteran and appellant. R. at 106–07.

The Certificate of Death, dated July 3, 1990, stated that the veteran was divorced and that he did not have a surviving spouse. That information was provided by his brother, Virgil Scogin. R. at 96. On September 7, 1990, Larry Gilliland, manager of Nichols Funeral Home, whose signature appears on the Certificate of Death, submitted a sworn statement to VA which attested to the fact that the veteran and appellant had lived together as a man and wife for 14 years prior to the veteran's death. R. at 111.

On September 7, 1990, Hobby Walker, Sheriff of Winston County, Alabama, and the Honorable Billy C. Ford, Probate Judge for Winston County, submitted sworn statements to VA attesting to the common-law marriage between the veteran and appellant. R. at 114.

On September 10, 1990, appellant filed her Notice of Disagreement with the August 14, 1990, Administrative Decision. R. at 109. On October 25, 1990, a Statement of the Case was sent to appellant. R. at 119–23. Appellant was denied death pension benefits because VA found that she was employed by the veteran rather than living together with him as man and wife. R. at 122. The BVA affirmed the denial on February 15, 1991. Appellant made a timely appeal to this Court. This Court has jurisdiction to hear this case pursuant to 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

■ In applying for death pension benefits, an appellant must submit a well-grounded claim in support of her status as a claimant. Although the concurring judges might wish it otherwise, this Court has held that this requires an appellant to first provide sufficient evidence to establish, by a preponderance of the evidence, that she is the spouse of the veteran. *Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991). A spouse has a number of ways in which to supply proof of marital status. 38 C.F.R. § 3.205(a) (1991).

■ According to 38 C.F.R. § 3.1(j) (1991), a marriage is valid if "valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued." Although the veteran's correspondence with VA can be construed as evidence that he was not married, it is not the only evidence provided in this case. According to 38 C.F.R. § 3.205(a)(6), marriage can be based on the affidavit of one party, if the other is deceased. That section provides that "marriage" may be established by the following evidence:

In jurisdictions where marriages other than by ceremony are recognized the **affidavits or certified statements of one** or both of the parties to the marriage, **if living,** setting forth all of the facts and circumstances concerning the alleged marriage, such as the agreement between the parties at the beginning of their cohabitation, the period of cohabitation, places and dates of residences, and whether children were born as the result of the relationship. This evidence should be supplemented by affidavits or certified statements from two or more persons who know as the result of personal observation the reputed relationship which existed between the parties to the alleged marriage including the periods of cohabitation, places of residences, whether the parties held themselves out as husband and wife, and whether they were generally accepted as such in the communities in which they lived.

(Emphasis added). The Secretary of Veterans Affairs (Secretary), in his brief, acknowledges that the statements made by appellant are certified statements. An examination of those statements shows that appellant has testified to much, if not all, of the information required under 38 C.F.R. § 3.205(a)(6).

■ To enter into a valid common-law marriage in Alabama, there must be the "(1) capacity; (2) present agreement or mutual consent to enter into the marriage relationship, permanent and exclusive of all others; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations." *Adams v. Boan*, 559 So.2d 1084, 1086 (Ala.1990) (citing *Copeland v. Richardson*, 551 So.2d 353 (Ala.1989)); *Downs v. Newman*, 500 So.2d 1062 (Ala.1986). Although cohabitation alone is not sufficient to supply the requisite consent required for common-law marriage, *see Turner v. Turner*, 251 Ala. 295, 37 So.2d 186, 188 (1948); *Humphrey v. Humphrey*, 293 Ala. 118, 300 So.2d 376, 377 (1974); *Etheridge v. Yeager*, 465 So.2d 378 (Ala.1985), no words of consent are required and present intention is inferred from cohabitation and public recognition.

*Walton v. Walton,* 409 So.2d 858, 860 (Ala. 1982) (citing *Skipworth v. Skipworth,* 360 So.2d 975 (Ala.1978)). *See also Underwood v. Underwood,* 460 So.2d 1306, 1308 (Ala.1984) (element of consent may be inferred from facts and circumstances). According to *Skipworth,*

> the operative time [for mutual consent] is when the agreement is initially entered into, and once other conditions of public recognition and cohabitation are met the only ways to terminate a common-law marriage are by death or divorce. A party cannot legally terminate the marriage by simply changing his or her mind and moving out or by telling selected individuals, "We're not really married."

360 So.2d at 976.

The Board cited *Beck v. Beck,* 286 Ala. 692, 246 So.2d 420 (1971), and *Herd v. Herd,* 194 Ala. 613, 69 So. 885 (1915) as examples of what constitutes a common-law marriage in Alabama. However, instead of explaining why appellant's circumstances did not support her contention that she was married to the veteran, the Board simply found that the veteran did not mutually consent or agree to be the husband of appellant. In reaching that conclusion, the Board considered only the veteran's representations to VA, and did not discuss any of the evidence submitted by appellant; nor did it discuss whether public recognition of the marriage existed within their community. In *Adams,* the Supreme Court of Alabama upheld a Circuit Court decision finding a common-law marriage despite the fact that the deceased husband and his wife "declared themselves single on their tax forms and employment applications and that they did not hold themselves out as married to members of [the deceased's] family." *Adams,* 559 So.2d at 1087. The Supreme Court of Alabama, in defining how to determine public recognition of a marriage, quoted:

> "But where no such ceremonies are required, and no record is made to attest the marriage, some public recognition of it is necessary as evidence of its existence. The protection of the parties and their children and considerations of public policy require this public recognition;

and it may be made in any way which can be seen and known by men, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation, and declaring the relation in documents executed by them whilst living together, such as deeds, wills, and other formal instruments...."

*Id.* at 1088 (quoting *Maryland v. Baldwin,* 112 U.S. 490, 495, 5 S.Ct. 278, 281, 28 L.Ed. 822 (1884)).

▆ In this case, the Board has failed to address all of the evidence submitted by appellant. Instead, it chose to focus on one specific fact—the veteran's representations to VA as to his marital status. The Board stated in its discussion:

> According to assertions made by and on behalf of the appellant, the appellant and the veteran lived together as a man and wife in the State of Alabama, for many years prior to the veteran's death. The evidence does not show, nor has it been contended, that the appellant and the veteran entered into a ceremonial marriage. The appellant has stated that she and the veteran held themselves out to be husband and wife. However, under the governing law of the State of Alabama, mutual consent of both parties to enter into a common-law marital relationship must be demonstrated. **As the veteran indicated that he was not married in eligibility verification reports of 1988 and 1989, and since he never claimed VA pension benefits for a dependent spouse prior to his death, the Board concludes that the veteran did not view his relationship with the appellant as a common-law marital relationship.** Though the appellant has submitted insurance and bank documents as well as statements from friends and relatives asserting that a common-law marital relationship existed, it is the opinion of the Board that the requisite burden of proof necessary to establish a common-law marriage in the State of Alabama has not been met.

*Mary E. Scott,* BVA 91–05099, at 5 (Feb. 15, 1991) (emphasis added). The Board, in

applying the law of the State of Alabama, failed to address the evidence showing that the veteran and appellant held themselves out to be married to the public in general and to the community in which they resided in particular. If the Board did consider this evidence, it did not explain why it apparently found VA income statements filed by the veteran more probative, credible, and relevant under Alabama law than the evidence submitted by appellant. Accordingly, the Board's decision must be vacated and the case remanded for readjudication by the Board consistent with this opinion, including the application by the Board of the governing Alabama law to the facts and evidence of this case. In addition, the Court directs the Board to issue in a timely fashion a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a), (d)(1) (formerly § 4004); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

### III. CONCLUSION

For the reasons stated above, the February 15, 1991, BVA decision is VACATED and the matter is REMANDED for readjudication consistent with this opinion.

KRAMER, Associate Judge, concurring:

I agree with the result obtained in Judge Ivers' opinion and the analysis used to obtain that result, except that I would not require appellant to prove her status as a spouse of the veteran by a preponderance of the evidence. As stated in my concurring opinion in *Aguilar v. Derwinski*, 2 Vet.App. 21, 23–24 (1991), status is but one element of a claim and should not be held to a burden of proof different than any other element.

STEINBERG, Associate Judge, concurring:

I concur in the opinion of the Court except insofar as it requires proof of spousal status by a preponderance of evidence before VA's duty to assist attaches. I agree with the views expressed by Judge Kramer in this case and in his concurring opinion in *Aguilar v. Derwinski*, 2 Vet.App. 21, 23–24 (1992). The *Aguilar* approach of requiring a person claiming benefits as a spouse of a veteran to establish spousal status by "preponderating evidence" before he or she achieves "claimant" status, and, hence, becomes entitled to VA assistance in developing the claim constructs, without statutory or regulatory support, a unique separate standard of proof governing the adjudication of a single fact issue. That approach does not comport with the statutory provisions governing VA adjudication of fact issues and review of such adjudications in this Court.

In the present case, the only issue to be determined in order to establish appellant's entitlement to pension benefits under 38 U.S.C. § 1541(a) (formerly § 541) is whether she is the "surviving spouse" of the veteran. Therefore, the threshold question as to whether she is a "claimant", and thus entitled to VA assistance under the *Aguilar* analysis, is identical to the ultimate question of her entitlement to pension benefits. Under the *Aguilar* approach, such a claimant, even though she may have submitted a well-grounded claim for entitlement to VA benefits, would never be entitled to VA assistance in developing the facts pertinent to her claim, since resolution of the threshold issue under *Aguilar*'s heightened standard of proof would be dispositive of the ultimate question of entitlement to benefits.

Section 5107(a) (formerly § 3007) of title 38, U.S.Code, establishing VA's duty to assist, states:

> Except when otherwise provided by the Secretary [of Veterans Affairs] in accordance with the provisions of this title, **a person** who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief in a fair and impartial individual that the claim is well grounded. The Secretary shall assist **such a claimant** in developing the facts pertinent to the claim.

(Emphasis added.) Section 5107(a) thus establishes that a "claimant" to whom VA owes a duty to assist is "a person who submits ... evidence sufficient to justify a

belief in a fair and impartial individual that the claim is well grounded." There is nothing in the statute or the applicable regulations to suggest that a person must submit anything above and beyond a well-grounded claim for benefits in order to establish that she is a "claimant" entitled to VA assistance.[1]

In defining the requirement of a well-grounded claim, the Court has stated:

A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)].

*Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A requirement that there be an additional, and more demanding, threshold standard of proof when the claim for entitlement to benefits depends, in whole or in part, upon whether a person is the surviving spouse of a veteran would deprive claimants in such cases of a right to VA assistance that the statute attaches upon submission of a well-grounded claim for benefits.

The appellant in this case submitted a well-grounded claim for survivors' pension benefits. She submitted several lay statements from persons who stated, based upon their personal knowledge, that the appellant and the veteran had lived together as man and wife and had held themselves out to the public as man and wife. R. at 67–71, 88–91, 113–15. She also submitted an award letter from the Social Security Administration (SSA) notifying her of an award of monthly benefits as the widow of the veteran. R. at 99–100. On that basis, her claim of entitlement to VA benefits based on her being the surviving spouse of the veteran was plausible, and, hence, well grounded.

Under the ordinary application of section 5107(a), then, VA would have had a duty to assist her in developing the facts pertinent to her claim. That duty would require VA to seek to obtain records from the SSA regarding its determination that she was entitled to benefits as the veteran's widow. *See Murincsak v. Derwinski*, 2 Vet.App. 363, 369–73 (1992) (pursuant to duty to assist, VA must seek to obtain all pertinent records, including SSA records, of which it is put on notice); *Masors v. Derwinski*, 2 Vet.App. 181, 187–88 (1992) (same); 38 C.F.R. § 3.159 (1991). The SSA and VA use the same standard—the applicable state law—to determine whether a valid common-law marriage existed for purposes of establishing "surviving spouse" or "widow" status. *See* 38 C.F.R. §§ 3.1(j), 3.50(a), (b) (1991); 20 C.F.R. § 404.345 (1991). Therefore, the findings and analysis of the SSA in reaching a conclusion that the appellant was the veteran's widow are clearly pertinent to the appellant's claim that she is entitled to VA pension benefits as the veteran's surviving spouse. Pursuant to its statutory duty to assist, VA should be required to seek to obtain the SSA records in this case. Regardless of *Aguilar*, VA is free on remand to obtain those highly pertinent records and give them appropriate consideration as part of the full readjudication ordered.

1. In its ordinary meaning, "claimant" refers to "[o]ne who claims or asserts a right, demand, or claim". BLACK'S LAW DICTIONARY 247 (6th ed. 1990). Absent clearly expressed contrary legislative intent, statutory terms will be interpreted according to their ordinary meanings. *See*

*Jones (McArthur) and Karnas v. Derwinski*, 2 Vet.App. 231, 232 (1992); *cf.* 57 Fed.Reg. 4088, 4110 (1992) (to be codified at 38 C.F.R. § 20.-3(f), (g)) (defining "claimant" for purposes of BVA rules as "a person who has filed" an "application" for benefits under title 38, U.S.Code).