**Felicitation V. VILLEZA, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–498.

United States Court of Veterans Appeals.

Sept. 4, 1996.

Bruce T. Wick, Cleveland, OH, for appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Michael R. Smalls were on the brief, for appellee.

Michael E. Wildhaber, Washington, DC, was on the brief, for National Organization of Veterans' Advocates as amicus curiae.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Felicitation V. Villeza, appeals an April 15, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied a revocation of a previous forfeiture decision under 38 U.S.C. § 6103(a). For the following reasons, the Court affirms the Board's decision denying revocation of the forfeiture decision.

## I. FACTS

The appellant is the widow of Ulpiano Villeza, a sergeant in the U.S. Armed Forces for the Far East, who was killed by the Japanese in March 1944. Record (R.) at 20–32. The appellant and the veteran had three children. R. at 37. She began receiving dependency and indemnity compensation (DIC) benefits as the veteran's surviving spouse on August 20, 1952. Supplemental (Suppl.) R. at 1. About four years later, the VA regional office (RO) received information that the appellant had been living in a husband and wife relationship with Mr. Antonio Ricaforte for the previous five years, and

that she had had four children with him. R. at 98. A field examination report dated December 21, 1956, confirmed that since 1949 the appellant had been living with Mr. Ricaforte, their four children, and two of the veteran's children. R. at 128–42. In March 1957, VA terminated the appellant's death benefits because of her relationship with Mr. Ricaforte. Suppl.R. at 2.

Thirteen years later, the appellant filed a new claim for benefits under Public Law 91–376, which allows reinstatement of DIC benefits for certain widows whose benefits were terminated because of remarriage or other conduct. R. at 179. She submitted a joint affidavit from two individuals not related to her who stated that, to their knowledge, she no longer maintained "illicit relations" with any man. R. at 184. In a statement in support of her claim, the appellant related that Mr. Ricaforte left her in 1957 when her benefits were terminated and that she had not seen him since then, nor was she living with any other man. R. at 181.

Because of her "history of false testimony," the RO ordered a field examination to determine that the appellant was no longer living with Mr. Ricaforte. R. at 187. In July 1972, a field examination in the vicinity of Marikina and Makati, Rizal, determined that the appellant was not living with any man. R. at 198–99. In a VA deposition, the appellant stated that she had not been living in a husband and wife relationship since at least January 1, 1971. R. at 202. Based on the field examination report, the RO restored her benefits under the provisions of Public Law 91–376. Suppl.R. at 3.

In 1973, about one year after the restoration of benefits, the RO received information that the appellant was living with Mr. Ricaforte. R. at 207. In a deposition, the informant claimed that the appellant was living with Mr. Ricaforte in the area of Roxas City, Capiz, and that she went to her Manilla address once a month to collect her benefit check. R. at 207–08. In March 1974, a field examination memorandum reported that disinterested neighbors in the vicinity of Roxas City, Capiz, stated that the appellant and Mr. Ricaforte had been living as husband and wife for at least the past three years. R. at

226–27. Additionally, a census taken in 1972 revealed that the appellant and Mr. Ricaforte were living in the same household. R. at 228. In the appellant's December 1973 deposition, she claimed that she only visited Roxas City and Jamidan, Capiz, and that she had only met Mr. Ricaforte once in passing. R. at 233. In answer to the field examiner's question why she thought anyone would tell VA that she was still living with Mr. Ricaforte, she replied, "I think they are envious of my fortune since my benefits has [sic] been restored." R. at 230. Based on the field examination evidence, the RO recommended that the matter be presented to the Compensation and Pension Service for forfeiture consideration. R. at 236–37. In October 1974, the Compensation and Pension Service determined that she had forfeited her benefits under 38 U.S.C. § 3503(a) (now codified at 38 U.S.C. § 6103(a)). R. at 240.

After a delay of more than thirteen years, the appellant, through an attorney, sent a letter to the U.S. House of Representatives, along with a supporting affidavit from a neighbor stating that the appellant no longer lived with Mr. Ricaforte. R. at 243–45. Sometime in January 1989, the RO determined that the appellant had not submitted any new or material evidence warranting a change in the forfeiture decision. R. at 257. In the appellant's March 1989 Notice of Disagreement (NOD), she claimed that the forfeiture decision was based upon false testimony. R. at 247. During her substantive appeal to the BVA, the appellant submitted affidavits from two neighbors implying that she and Mr. Ricaforte no longer lived together. R. at 253, 254. She claimed that the persons who presented testimony to the field examiner that she and Mr. Ricaforte were living together were people she had "disappointed when they asked for financial loans." R. at 262. However, in an October 1990 hearing at the RO, she did not submit any evidence to substantiate her claims, but stated that all of her records had been destroyed by a typhoon. R. at 264.

A BVA decision in July 1991 noted that the appellant had sent letters to Congress in July 1975 which disputed the forfeiture decision. R. at 275. The Board construed these letters as a disagreement with the forfeiture decision and consequently decided that the RO's October 1974 decision was not final. *Ibid.* The BVA remanded the case to the RO to determine de novo whether or not to revoke the forfeiture decision. R. at 275–76. Upon remand, the RO concluded that the appellant had knowingly submitted false statements regarding her marital status and recommended that her benefits be forfeited under 38 U.S.C. § 6103(a). R. at 279–82. The appellant submitted affidavits from some of her children which supported her contention that she had separated from Mr. Ricaforte in 1972. R. at 284–89. Additionally, some of these affidavits challenged the accuracy of the 1972 census which had shown that the appellant had resided with Mr. Ricaforte in Roxas City, Capiz. R. at 285, 289. The Board's decision now on appeal followed.

The appellant's informal brief argues that the BVA ignored evidence which established that after 1970, Mr. Ricaforte had been living with someone else and, in fact, had subsequently married that person. She also raises a constitutional issue, arguing that Filipino claimants are treated differently from American claimants in that unremarried American claimants who are openly cohabiting with someone are not denied benefits on that ground. The Secretary argues that the BVA's decision should be affirmed because there is a plausible basis for the Board's conclusion that the appellant had given false information. In the alternative, he argues that the Board's decision should be vacated and the matter remanded for a determination of the appellant's claim that 38 U.S.C. § 6103(a) is unconstitutional. If the Court determines that the constitutional claim is ripe for review, the Secretary argues, the Court should hold the statute constitutional.

On August 3, 1995, this Court ordered the appellant to "file a memorandum addressing whether under the appropriate statutes and regulations the Board's determination that the July 1975 letters could be treated as an NOD is error." Interested amici curiae were invited to file briefs as well. The National Organization of Veterans' Advocates filed an amicus brief, arguing that the Board's conclusion that the appellant's 1975 correspon-

dence to Congress was an NOD was contrary to law. The amicus brief argues that, in resurrecting an old claim in order to nullify an existing appeal of a reopened claim that originated after a final Board decision, the Board's determination is ultra vires, and should not be allowed to preclude this Court's jurisdiction.

## II. ANALYSIS

### A. Jurisdiction

■ Since the Board purported to treat the appellant's appeal as one from the long-dormant October 1974 claim, we must first determine if the Court has jurisdiction. If, indeed, the Board was correct in its approach, the Court would lack jurisdiction because the 1975 NOD-equivalent letters could not confer jurisdiction. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *see also Hamilton v. Brown*, 4 Vet.App. 528, 531 (1993) (en banc).

The statutory requirements for an NOD are set forth in section 7105(b) of title 38 of the United States Code. 38 U.S.C. § 7105(b). Section 7105(b) provides in pertinent part that an NOD must be filed with the agency of original jurisdiction (AOJ), that is, the agency which entered the initial review or determination concerning a claim; that an NOD must be filed within one year from the date of mailing of notice of the determination; and that an NOD "must be in writing and may be filed by the claimant, the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected by the claimant or legal guardian." *Ibid.*

An NOD is defined by VA regulations as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [AOJ] and a desire to contest the result." 38 C.F.R. § 20.201 (1992) (as to the pertinent language, the regulation was essentially the same, but codified at 38 C.F.R. § 19.118, at the time relevant to the procedural facts of this appeal). The purpose of an NOD, to which VJRA section 402 refers, is to initiate BVA appellate review by letting VA know of the claimant's intent to appeal to the BVA, within one year from the date of VA's mailing its notice of the result of a determination by an AOJ. 38 U.S.C. § 7105(a), (b). The Court's decision in *Hamilton* held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton*, 4 Vet. App. at 538.

Despite the Board's reliance on the appellant's alleged letters to Congress indicating her intent to appeal the RO decision, such letters, if they exist, are not present in the record. There is, therefore, insufficient basis to conclude that these statements constituted an NOD so as to trigger appellate review by VA back in 1975, when they were allegedly received. This Court has held that "[w]here ... a dispute arises as to the content of the record and where the documents proffered *by the appellant* are within the Secretary's control and could reasonably be expected to be a part of the record ... [such documents] should be included in the record." *Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992) (emphasis added). However, it was the BVA which seized on the 1975 NOD device, and the Secretary has rightly not sought to dismiss the appeal. *See, e.g., Smith v. Brown*, 8 Vet.App. 546, 551–52 (1996) (en banc) (holding that an appellant cannot be deprived of his or her right to appeal to this Court as a result of action by the BVA to correct an alleged error in the record).

Accordingly, as no timely appeal followed the 1974 denial, that decision became final, and the appellant's current effort to reopen her claim constitutes a "new" claim for purposes of this Court's jurisdiction. *Thompson v. Derwinski*, 1 Vet.App. 251 (1991) ("[I]f evidence is found to be both 'new and material' then the finality of a once 'final' BVA decision is removed and the claim must be reopened and the former disposition reviewed."). 38 U.S.C. §§ 5108, 7104; *see also Person v. Brown*, 5 Vet.App. 449 (1993) (failing to appeal an RO decision within a one-year period renders the decision final). The

Court finds that the appellant's letter of March 1989 constitutes her NOD as to the denial of reopening, and satisfies the jurisdictional requirement for an NOD that postdates November 17, 1988. *Hamilton, supra.*

### B. Previous Forfeiture Decision

■ Having concluded that the Court has jurisdiction, we move to the merits of the appellant's case. With the outstanding 1974 forfeiture, the appellant is not a benefits-eligible claimant. Her eligibility status no longer exists, and her present effort is to establish it through another reopening. *Villaruz v. Brown,* 7 Vet.App. 561, 565 (1995). As such, she is in a posture not unlike that described in *Aguilar v. Derwinski,* 2 Vet. App. 21 (1991), where we held that the purported widow of a veteran had the burden of establishing eligibility by a preponderance of the evidence. Only when that burden is met does the non-adversarial claims process become operable. *See Sarmiento v. Brown,* 7 Vet.App. 80 (1994) (holding that no "duty to assist" attaches until the appellant attains the status of claimant under 38 U.S.C. § 101(2)); *see also Rogers v. Derwinski,* 2 Vet.App. 419, 422 (1992) ("[W]hen dealing with a question of status, this Court has held ... that the person seeking to establish that status must prove it by a preponderance of the evidence. Therefore, the benefit of the doubt doctrine is not applicable here.").

After the appellant's benefits were restored in August 1972, based on her deposition and statements from her neighbors that she had not lived in a husband and wife relationship since January 1, 1971, another field examination was conducted. In April 1974, based on statements from randomly chosen neighbors, and the results of the 1972 census, the Board decided that the appellant had forfeited all rights, claims, and benefits under all laws administered by VA (except insurance benefits) pursuant to 38 U.S.C. § 6103(a). The statute provides as follows:

> Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

*Ibid.* In a detailed statement of reasons and bases, the BVA found that the preponderance of the evidence was against the appellant's claim for revocation of the forfeiture declared against her. Although the Board failed to view this case as one involving an attempt to establish threshold status as a benefits-eligible claimant, its ultimate factual conclusion necessarily encompasses a finding that the appellant failed to establish her status by a preponderance of the evidence. From the record, there appears a "plausible basis" for the Board's determination, and therefore, the Court finds no prejudicial error in the BVA's decision. 38 U.S.C. § 7261(b).

### C. Constitutional Issues

■ The appellant briefly raised her constitutional arguments before the BVA in 1990. The Board, however did not address that issue, but found instead that the preponderance of the evidence was against the appellant's claim to revoke the forfeiture decision. In the April 15, 1993, Board decision here on appeal, the BVA recognized that "[t]he appellant also contends that the forfeiture law is unconstitutional because it applies unfairly to Philippine claimants." In answering this charge, the BVA stated, "VA and the Board have no authority to disregard a duly enacted law." R. at 13. In her informal brief to this Court, the appellant contends that the forfeiture provisions in question are "not [ ] imposed on U.S. Residents when they are living in ostensible marital relationships with their respective ... paramours, while on the other hand, only Philippine widow-claimants ... are swiftly and permanently issued forfeiture decisions" under similar circumstances. Appellant's Brief at 1. The Court notes that, implicit in her claim, is the appellant's tacit admission that she is one of the Filipino widows whose "ostensible marital relationships" have caused them to receive disparate treatment. However, other than her

bald accusations, the appellant has offered no objective evidence supporting this constitutional claim. Consequently, the Court holds she had failed to meet the threshold burden of proof as to her selective application claim. *Cf. U.S. v. Armstrong*, — U.S. —, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (holding that, to establish a discriminatory effect of prosecution in a race case, the defendant must show that similarly situated individuals of a different race were not prosecuted).

## III. CONCLUSION

Accordingly, upon consideration of the record, the appellant's informal brief, the Secretary's brief, and the brief of amicus curiae, the Board's decision of April 15, 1993, is AFFIRMED.