Patrick F. D'AMICO, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 97–786.

United States Court of Appeals
for Veterans Claims.

May 3, 1999.

Before NEBEKER, Chief Judge, and
KRAMER, FARLEY, HOLDAWAY,
IVERS, STEINBERG, and GREENE,
Judges.

## ORDER

PER CURIAM:

On March 23, 1999, in a panel opinion, the Court affirmed the February 1997 decision of the Board of Veterans' Appeals that determined that he had not submitted new and material evidence to reopen a March 1979 VA administrative decision that his character of discharge was a bar to eligibility for VA benefits. *D'Amico v. West,* 12 Vet.App. 264 (1999). During the internal circulation of that order before its release, *see* the Court's Internal Operating Procedures (IOP) at V.(a)(3), a judge requested en banc decision. On consideration of the foregoing, and it appearing quite clearly that: "The purpose of the Department [of Veterans Affairs] is to administer the laws providing benefits and other services **to veterans** and the dependents and the beneficiaries **of veterans**," 38 U.S.C. § 301(b) (emphasis added), as defined by 38 U.S.C. § 101(2), and it further appearing that a decision of the full Court is not necessary either to ensure uniformity of decision or to resolve a question of exceptional importance—there being no question that appellant's status is by § 301(b), supra, a bar to receiving veterans benefits, which include the nonadversarial, ex parte process of the De-

partment and the benefit of the evidentiary equipoise provision of 38 U.S.C. § 5107(b), it is by the majority of the Court

ORDERED that en banc decision is DE-NIED.

STEINBERG and KRAMER, Judges,
dissenting:

An en banc decision was requested by Judge Steinberg in this case in order to reconsider the holding of *Laruan v. West,* 11 Vet.App. 80 (1998) (en banc), that "before becoming entitled to 'status' as a claimant for [Department of Veterans Affairs (VA)] benefits, an appellant ha[s] first to demonstrate by a preponderance of the evidence (1) that he or she was a 'veteran,' or (2) 'veteran' status for the person upon whose military service the claim for VA benefits was predicated." *Id.* at 84 (quoting *Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991)); *see also Holmes v. Brown,* 10 Vet.App. 38, 42 (1997) ("person seeking VA benefits must first establish by a preponderance of the evidence that the service member, upon whose service such benefits are predicated, has attained the status of veteran"). Our own objections to the *Laruan* opinion were set forth in our dissent thereto, 11 Vet.App. at 86–91.[1] They are as valid today as they were a year ago— even more so, as an examination of the panel opinion in *D'Amico* illustrates. *See D'Amico v. West,* 12 Vet.App. 264 (1999).

### I. Secretary's Opposition

Moreover, in a recent memorandum submitted to the Court in the case of *Trilles v. West,* 12 Vet.App. 59 (1998) a case involving forfeiture of VA-benefits eligibility, the Secretary echoes our concerns over *Laruan. See* February 8, 1999, memorandum in response to Court's December 8, 1998, briefing order in *Trilles v. West,* 12 Vet.App. 59 (1998), at 8 ("[t]he Secretary is unable to identify a statutory basis for the Court's conclusion that a person must establish that he or she has the status of veteran …

---

1. These objections were voiced initially by Judge Kramer in *Aguilar v. Derwinski,* 2 Vet.App. 21, 23–24 (1991) (Kramer, J., concurring); *see also Burke v. Brown,* 8 Vet.App. 376, 377–78 (1995) (per curiam order) (Steinberg, J., concurring); *Sarmiento v. Brown,* 7 Vet.App. 80, 87–88 (1994)

(Kramer, J., concurring); *Scott (Mary) v. Principi,* 3 Vet.App. 352, 356 (1992) (Kramer, J., concurring); *id.* at 356–57 (Steinberg, J., concurring); *Rogers v. Derwinski,* 2 Vet.App. 419, 422 (1992) (Steinberg, J., concurring).

before he or she may be considered a 'claimant' within the meaning of 38 U.S.C. § 5107(b)"), 7–10 (set forth *infra* ). The Secretary recommends a remand in *Trilles, supra,* under *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998), because the forfeiture decision there at issue is subject to reopening based on new and material evidence (page 13). The Secretary rejects the Court's holding in *Laruan* that "status" denials are not subject to reopening under section 5108 and states (page 8): "The Secretary has found nothing in the language or history of section 5107(b) or other provisions to suggest that the term 'claimant' was intended to refer only to one who has established by evidence that he or she has the status of a veteran, a survivor of a veteran, or a benefits-eligible claimant." The Secretary goes on to state (pages 9–10): "Similarly, there is no indication that VA has required claimants to establish 'benefits-eligible claimant' status by a preponderance of evidence in order to be considered a 'claimant' or to obtain the procedural rights afforded by statute to 'claimants.' "

## II. *D'Amico's* Creativeness

*D'Amico* is illustrative of why *Laruan* should be overruled. To its credit, the *D'Amico* panel struggled valiantly to reconcile *Laruan,* but ended up by concluding that a "nonclaimant" can*not* apply for a reopening, based on new and material evidence, of a prior denial of veteran "status" but *can* apply for a "reconsideration" of that denial based on "a new factual basis". *D'Amico,* 12 Vet. App. at 267. The Court has thus created a process of "reconsideration" to be sought at a VA regional office (RO) and done so without any indication of the statutory or regulatory basis for such a process.

In contrast, *Laruan* had suggested that every time a person seeks status there is a new "nonclaim", as follows: (1) "Unless a claimant first carries the initial burden of establishing status as a veteran ... the laws administered by the Secretary and the resources of the VA are not applicable or available", *Laruan,* 11 Vet.App. at 85; (2) a denial of veteran status, such as a determination that the former service member's discharge was under dishonorable conditions, is not

subject to reopening under 38 U.S.C. § 5108, *ibid.;* and (3) therefore, under *Laruan,* a person who has been denied veteran status may repeatedly attempt to refile a claim for benefits, and such reattempts are to be adjudicated under the preponderance standard in terms of the question of status. The panel in *D'Amico* notes this *Laruan*-suggested syllogism by characterizing *Laruan* as "holding that where ... in 1952[VA] determined that the appellant was discharged under dishonorable conditions and the appellant subsequently applied to have his character of discharge changed, the Board of Veterans' Appeals (Board or BVA) should have reviewed the application under the preponderance of the evidence standard instead of for 'new and material' evidence under section 5108". *D'Amico,* 12 Vet.App. at 267.

Apparently concerned about the incongruity of such a process of potentially interminable readjudication of the same question without finality, the panel in *D'Amico* has attempted to prevent such endless readjudications by creating the RO "reconsideration" process. In so doing, the opinion purported to eschew "claim" and "claimant" status, but then used the term "new factual basis", which is a construct strikingly reminiscent of the prohibition in 38 U.S.C. § 7104(b) against considering a disallowed "*claim* based upon the same factual basis" (emphasis added). Thus, the Court seemed to borrow title 38 terminology—applicable only (according to *Laruan* ) to a person who has established veteran status and is thus considered to be a "claimant"—in order to create a special evidentiary standard applicable to a reassertion of veteran status by such a so-called "nonclaimant".

In doing so, the *D'Amico* panel may have inadvertently created a lower evidentiary standard for "nonclaimants" than exists for real "claimants" under 38 U.S.C. § 5108 and 38 C.F.R. § 3.156(a) (1998), because only "different" and "new" are used to define "factual basis"—and not "material", which, at least under 38 C.F.R. § 3.156(a), means "so significant that it must be considered in order to fairly decide the merits of the claim". *See Elkins v. West,* 12 Vet.App. 209, 219–20 (1999) (Holdaway, J., concurring). We use

the word "may" with respect to creating a lower evidentiary standard only because other than in its use of "different" and "new", the opinion provides no answer to the many questions that will inevitably arise during future VA adjudications of repeat status "nonclaims". For example, when this special "status" evidentiary threshold is applied, is the credibility of the "new" evidence presumed? The only clue in the *D'Amico* opinion as to the answer to that question is in another of the opinion's descriptions of *Laruan* as "explaining that [under *Laruan* ] only persons who have established veteran's [sic] status are entitled to the relaxed evidentiary standard under section 5108 of what constitutes 'new and material' evidence". *D'Amico*, 12 Vet.App. at 267 (citing *Laruan*, 11 Vet.App. at 85) [2]. *Laruan*'s reference to this so-called "relaxed" evidentiary standard is followed by a cite to *Evans (Samuel) v. Brown*, 9 Vet.App. 273, 282–84 (1996); the attendant parenthetical for *Evans*—"(setting forth analysis applicable to determinations of what evidence constitutes 'new and material' for purposes of reopening and discussing presumption of credibility afforded to newly presented evidence)"—may suggest that the "presumption of credibility" is the "relaxed" evidentiary standard to which *D'Amico* and *Laruan* were referring.

Another unresolved question created by *D'Amico* is what standard of review is to be applied by the Court to BVA decisions as to whether a "nonclaimant" qualifies for a VARO "reconsideration". The Court appears to apply *de novo* review because the opinion articulates no deference to the Board but rather determines that there was no new factual basis "as a matter of law". 12 Vet. App. at 268. However, applying de novo review to a decision as to whether to reconsider the status of a "nonclaimant" under *D'Amico* appears totally anomalous now that, under *Elkins*, 12 Vet.App. at 217–18, the Court has unanimously decided generally to defer to the Board as to whether evidence is "new"

for the purpose of reopening under 38 U.S.C. § 5108.

### III. Need to Overrule *Laruan*

By refusing at this point to revisit *Laruan* and its misbegotten concept of "status" as a separate element to be demonstrated before a person becomes a "claimant", the Court is ignoring the binding opinion that Chief Judge Mayer wrote for the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Collaro v. West*, which stated:

> There are five common elements to a veteran's application for benefits: *status as a veteran*, the existence of disability, a connection between the veteran's service and the disability, the degree of the disability, and the effective date of the disability. Disagreement between the agency and the veteran about any of these may create an issue about which the agency reaches an adjudicative determination and which forms the substance of the veteran's [Notice of Disagreement (NOD) ].

*Collaro*, 136 F.3d 1304, 1308 (Fed.Cir.1998) (emphasis added). Because NODs are filed by "claimants" under 38 U.S.C. § 7105(b)(2) and (d)(1), the above *Collaro* analysis by the Federal Circuit means that an application for benefits disallowed on the ground of veteran status is indeed a disallowed "claim". *See also* 38 C.F.R. § 3.1(p) (1998) ("*Claim—Application* means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit.").

Moreover, *Laruan's* establishment of "nonclaims" and "nonclaimants" runs counter to the statutory scheme set forth in 38 U.S.C. §§ 5101, 5102, 5103, and 5104 (regarding claims, forms, applications, and notices of decisions). As this Court unanimously proclaimed in *Edenfield v. Brown*, after parsing these sections: "[T]here is no mystery about what it takes to become a 'claimant' for VA benefits"; "a person claiming VA benefits . . . on an application form provided by the Secretary" is "a claimant" for VA benefits.

---

**2.** Of course, at the time *Laruan* used the term "relaxed", *Hodge v. West*, 155 F.3d 1356 (Fed. Cir.1998), had not been issued. The term "relaxed" was then a total misnomer, at least in the view of the U.S. Court of Appeals for the Federal

Circuit, which had indicated in *Hodge* that this Court's test (which *Hodge* overturned, 155 F.3d at 1360) for determining material evidence, a test in existence at the time of *Laruan's* issuance, was impermissibly restrictive.

*Edenfield,* 8 Vet.App. 384, 389 (1995) (en banc).

The purpose of *Laruan* appears to be to apply the preponderance-of-the-evidence burden to status questions—the opposite side of the coin from the equipoise doctrine established by 38 U.S.C. § 5107(b), under which the evidence must preponderate against the claim, once well grounded, in order for VA to deny it, *see Gilbert v. Derwinski,* 1 Vet.App. 49, 54 (1990). Our observations of the Court's "status" cases under the *Laruan* precedent suggests, however, that the *Laruan*-manufactured burden ultimately makes virtually no difference in most "status" adjudications. Such is the case here where the appellant's special upgraded discharge still did not entitle him, as a matter of law, to VA-benefits eligibility. Additionally, many cases are readily resolved under *Duro v. Derwinski,* because "veteran" status either is or is not established by U.S. service department records. *Duro,* 2 Vet.App. 530, 532 (1992) (findings by U.S. service department as to qualifying service for VA benefits "are binding on ... VA for purposes of establishing service in the U.S. Armed Forces"); *see also* 38 C.F.R. 3.203 (1998) (making service department verification a requirement for establishing that VA claimant served in the U.S. Armed Forces). Accordingly, it remains a mystery to us why the Court feels compelled to continue to adhere to a precedent that forces both the abandonment of the standard reopening analysis and the judge-made creation of an RO "reconsideration" process without reference to any applicable law or regulation.

In addition, in adhering to *Laruan* after the Secretary has authoritatively disavowed it, the Court ignores long-standing precedent of the Supreme Court, the Federal Circuit, and this Court, requiring deference to an interpretation of a statute by the agency that is charged with administering that statute if that interpretation is reasonable and not at odds with the statutory language or unambiguous legislative intent.[3] Although the Secretary's interpretation of existing law and regulation pertaining to *Laruan* has not, apparently, been memorialized in a regulation, General Counsel Precedent Opinion, or other VA issuance, that appears to be a function of there having been no occasion to belabor the obvious—that is, the theses of *Laruan* (and, for that matter, of *D'Amico* ) are creations of the Court, without any basis in law, regulation, or precedent. Put simply, "who would've ever thunk it?"

## IV. Inconsistent Court Precedent

Finally, we note that one possible interpretation of *Laruan* and *Aguilar,* and now *D'Amico,* would seem to be to limit the approach there to determinations of "veteran" status only. However, the Court in *Villeza v. Brown* had, before *Laruan,* already applied the preponderance burden against the widow of a veteran who challenged a 1974 VA decision declaring her to have forfeited her right to survivor benefits because of false affidavits that she had filed regarding her relationship with another man. *Villeza,* 9 Vet.App. 353, 355–57 (1996). The issue involved in *Villeza* had nothing to do with the status of her deceased husband, who had been killed in action during World War II, but rather with *the widow's* status as what

3. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) (holding that agency interpretation of statute set forth in an Advisory Opinion rather than in a regulation was entitled to deference, "whether reached by adjudication or by rulemaking", when interpretation is not "inconsistent with the statutory mandate" and does not "frustrate the policy that Congress sought to implement"); *Smith (William) v. Brown,* 35 F.3d 1516, 1527 (Fed.Cir. 1994) (citing *Martin v. Occupational Safety &*

*Health Review Comm'n,* 499 U.S. 144, 152, 152–53, 154–57, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), and characterizing that decision as follows: "formal Secretarial interpretations command deference regardless of form they assume so long as they are not mere 'litigating positions' or '*post hoc* rationalizations' "); *Travelstead v. Derwinski,* 978 F.2d 1244, 1250 (Fed.Cir.1992) (noting that lesser deference is given to "agency pronouncements that are merely interpretive" and that such deference would "vary[ ] with such factors as the timing and consistency of the agency's position and the nature of its expertise"); *Hermogenes v. Brown,* 9 Vet.App. 75, 78 (1996) (deferring to Secretary's legal interpretation, expressed in the form of a BVA decision).

the Court then referred to as "a benefits-eligible claimant". *Id.* at 357. The Court held that she could reestablish her eligibility status only if she had a preponderance of the evidence in her favor. *Ibid.* Very recently, however, the Court, without explanation or even recognition of *Villeza*, applied a traditional reopening analysis to a claim for a dependent's allowance by the child of a veteran who was seeking to show her status as a so-called "helpless child"—one "who, before attaining the age of eighteen years, became permanently incapable of self-support", 38 U.S.C. § 101(4)(A)(ii). *See Fulkerson v. West*, 12 Vet.App. 268 (1999) (per curiam order).

## V. Conclusion

Our dissenting opinion in *Laruan* concluded with a quotation from Hans Christian Anderson: " 'But he doesn't have anything on!' said a little child." [4] Now, the Secretary has joined in pointing out this unfettered embarrassment. At the time of *Laruan*, we called attention to the Court's having hastened to judgment there "without the benefit of a conference of the judges, briefing, or oral argument." *Ibid.* Now, the Secretary's February 8, 1999, memorandum in *Trilles, supra*, provides one of those missing processes and firmly rejects the theses of *Laruan.* So that the public will have the benefit of the Secretary's analysis of the Court's precedents in and around *Laruan*, we attach as an Appendix the pertinent analyses from pages 7–10 of that memorandum of law, which is directly applicable to the validity of *Laruan*, even though *Trilles* involves an attempt to reopen a disallowance based on a VA determination of forfeiture of VA-benefits eligibility by the widow of a veteran.

## Appendix

EXCERPT FROM MEMORANDUM OF SECRETARY OF VETERANS AFFAIRS

(Filed February 8, 1999)

in

*Trilles v. West*, No. 97–912

... The cited cases reflect the Court's conclusion that persons seeking to establish entitlement to benefits must establish that they have the necessary "status," as a veteran, a survivor of a veteran, or a "benefits-eligible claimant," before they can obtain the status of a "claimant" and the benefit of statutory provisions relating to VA "claimants." *See Laruan v. West*, 11 Vet.App. 80, 85 (1998); *Villeza v. Brown*, 9 Vet.App. 353, 357 (1996), *aff'd*, 114 F.3d 1206 (Fed.Cir.1997) (table). The Court has concluded that the benefit-of-the doubt provisions of 38 U.S.C. § 5107(b) apply only to "claimants," and, therefore, do not apply in determining whether an individual has the requisite "status" to be considered a claimant. *See Laruan*, 11 Vet.App. at 85–86; *Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991). Accordingly, the Court has held that "status" must be demonstrated by a preponderance of evidence. *See Laruan*, 11 Vet.App. at 84–86. The Court's precedents further indicate that questions of status are not subject to the provisions of 38 U.S.C. § 5108 governing reopening based on new and material evidence because, in the absence of proof of "status," there is no valid claim which could be reopened. *See Sarmiento v. Brown*, 7 Vet.App. 80, 83–84 (1994).

Pursuant to the Court's precedents, it appears that where VA has rendered a final decision of forfeiture against a person under 38 U.S.C. § 6103(a), such person would be required to establish by a preponderance of the evidence that he or she is a "benefits-eligible claimant." Such proof may consist of evidence that the person did not make the false or fraudulent statements on which the forfeiture decision was based, evidence that the person has received a presidential pardon for the acts in question (*see* 38 C.F.R. § 3.669(d)), or evidence that the forfeiture decision was otherwise incorrect. The Secretary is unable to identify a statutory basis for the Court's conclusion that a person must establish that he or she has the status of a

---

**4.** *Laruan*, 11 Vet.App. at 91 (Kramer and Steinberg, JJ., dissenting, quoting HANS CHRISTIAN ANDERSEN, *The Emperor's New Clothes*, in THE SNOW QUEEN AND OTHER TALES 72, 77 (Pat Shaw Iversen trans., The New American Library 1966)).

veteran, a survivor, or a benefits-eligible claimant before he or she may be considered a "claimant" within the meaning of 38 U.S.C. § 5107(b). The term "claimant," as used in section 5107(b) and other provisions of title 38, United States Code, is not expressly defined by statute or regulation. *Cf.* 38 C.F.R. § 20.3(g) (defining "claimant" for purposes of 38 C.F.R. part 20). Absent any evidence of a contrary legislative intent, the term "claimant" would generally be presumed to have its ordinary meaning, which refers to "[o]ne who claims or asserts a right, demand or claim." *Black's Law Dictionary* 247 (6th ed.1990). Accordingly, the term "claimant," in and of itself, ordinarily does not imply any threshold evidentiary burden.

The Secretary has found nothing in the language or history of section 5107(b) or other provisions to suggest that the term "claimant" was intended to refer only to one who has established by evidence that he or she has the status of a veteran, a survivor of a veteran, or a benefits-eligible claimant. Notably, 38 U.S.C. § 5107(a) provides that a "person who submits a claim for benefits" from VA must submit evidence sufficient to justify a belief in a fair and impartial individual that the claim is well grounded, and that VA is required to assist "such a claimant" (i.e., one who has submitted such evidence) in developing the facts pertinent to the claim. To the extent that any claim for benefits is dependent upon establishing that the person seeking benefits is a veteran or survivor of a veteran or has not forfeited the right to VA benefits, the person may be required to submit evidence of such status in order to establish a well-grounded claim under section 5107(a). The express evidentiary burden stated in section 5107(a), however, may suggest that Congress did not intend to impose a separate evidentiary burden merely by its use of the term "claimant" in section 5107(b) and other statutes. Moreover, a conclusion that the term "claimant" refers only to one who has established the requisite "status" by a preponderance of evidence may suggest that persons who fail to establish such status are not entitled to such procedural rights as the right to notice of decisions under 38 U.S.C. § 5104, and the right to file a notice of disagreement under 38 U.S.C. § 7105(b)(2), because those statutes refer to "claimants." It would appear unlikely that Congress intended to foreclose such procedural rights only with respect to determinations of "status" matters.

The Secretary has found no VA regulations or opinions indicating that proof of "status" is required before a person may be considered a claimant for purposes of applicable statutes and regulations, or that determination of that issue is governed by different procedures than apply to other elements of establishing entitlement to benefits. VA regulations provide that veteran status and survivor status generally must be established by specific types of evidence. *See* 38 C.F.R. §§ 3.203, 3.205, 3.210; *but see* 38 U.S.C. § 5124 (authorizing VA to accept claimant's written statement as proof of marriage). However, the requirement of specific types of evidence does not suggest that individuals must establish status by a preponderance of evidence in order to be considered "claimants" or to have filed a "claim." Similarly, there is no indication that VA has required claimants to establish "benefits-eligible claimant" status by a preponderance of evidence in order to be considered a "claimant" or to obtain the procedural rights afforded by statute to "claimants." Rather, it appears that VA has consistently concluded that a forfeiture decision may be reviewed on the basis of new and material evidence or on the basis of clear and unmistakable error, in accordance with the established procedures governing those types of review.