GREENE, Judge, filed the opinion of the Court. KRAMER and STEINBERG, Judges, filed a concurring opinion. FARLEY, Judge, filed a dissenting opinion in which NEBEKER, Chief Judge, and IVERS, Judge, joined. NEBEKER, Chief Judge, filed a dissenting opinion.
GREENE, Judge:
Virginia D. Trilles appeals a November 14, 1996, Board of Veterans’ Appeals (Board) decision that determined that no new and material evidence had been presented to reopen a decision under 38 U.S.C. § 6103 forfeiting her VA benefits (except insurance benefits). Record (R.) at 1-8. For the reasons that follow, the Court will vacate the Board’s decision and remand the matter for readjudication.
I. BACKGROUND
Mrs. Trilles was married to veteran Zo-simo Trilles (R at 49) when he died in a Japanese prisoner of war camp in May 1942 (R. at 10). In 1956, she filed a claim for VA benefits (R. at 39-^2) and was awarded VA dependency and indemnity compensation (DIC) as the veteran’s unre-married widow (R. at 57). In 1960, she admitted that she had lived in a marital relationship with Santiago Penaflorida (Santiago) from 1943 through 1945 and that together they had had a child. R. at 87-89, 91, 112-15. Consequently, her benefits were discontinued because VA no longer recognized her as the unremarried widow of a veteran. R. at 99. She appealed that decision to the Board. R. at 106. Her appeal was denied. R. at 109-10.
In 1970, Congress amended section 103(d) of title 38 of the United States Code to provide that the “remarriage of a widow of a veteran shall not bar the furnishing of benefits to her as the widow of the veteran if the remarriage has been terminated by death or has been dissolved by ... divorce ” Pub.L. No. 91-376, § 4, 84 Stat. 787, 789 (1970) reprinted in 1970 U.S.C.C.A.N. 926, 929. In 1971, by administrative decision, Mrs. Trilles’ VA benefits were restored based on that amendment. R. at 190-92.
A VA field investigation was initiated in 1985 to confirm Mrs. Trilles’ identity, the validity of her marriage to the veteran, and her marital status after the restoration in 1971. R. at 269. During this investigation, she provided a sworn statement attesting that, following the veteran’s death, she was forced to marry Augusto Manilla Malapitan (Augusto) in 1949. R. at 245-47. A marriage certificate issued on May 25, 1987, confirmed that Virginia Trilles was married to Augusto on February 26, 1949. R. at 261. Further, the investigation report included a copy of a death certificate, issued on May 25, 1987, confirming that Augusto had died on January 9, 1955. R. at 259. This certificate was issued by the office of the Civil Registrar, Iroson, Sorsogon, the Philippines. Id. With this evidence, VA initiated action to terminate Mrs. Trilles’ benefits, alleging that she had deliberately presented fraudulent statements to VA when she declared in her 1956 application for benefits and again in her depositions in 1959 and 1970 that she had not remarried since the veteran’s death in 1942. R. at 71-72, 197-98. VA notified Mrs. Trilles of its intent to terminate her benefits and provided her with an opportunity to explain or present other evidence on her behalf. R. at 272-74. She also was advised of her right to a *316 hearing and to be represented by counsel. Id. In response, she attested that the marriage was invalid because it was the result of coercion and duress. Thus, she claimed that she had never considered Augusto her husband. R. at 279-80. Two additional affiants swore that in January 1949 they had heard that she had been “forcibly taken by armed men.” R. at 282, 284.
In April 1988, the Veterans’ Administration (now Department of Veterans Affairs) Compensation and Pension Service issued an administrative decision that Mrs. Trilles had made a fraudulent statement in connection with her application for VA benefits and thus declared, under 38 U.S.C. § 3503(a) (now 38 U.S.C. § 6103(a)), that she had “forfeited all rights, claims, and benefits to which she might otherwise be entitled.” R. at 292-95. In 1989, Mrs. Trilles filed an appeal of this decision to the Board. R. at 312-13. In her appeal to the Board, her written statement asserted the following: “In all humility, I admitted to have [sic] been married to Augusto Ma-lapitan only, when somebody furnished the VA my Marriage Contract or Married [sic] Certificate. At' first I don’t believe that there was such marriage because Augusto Malapitan did not furnish me such marriage contract.... Hence, I denied of having married to Augusto Malapitan on two occasions that I was interviewed.” Id. But, upon learning that a marriage certificate had been furnished to VA, she “readily admitted to have married ... Augusto Malapitan when [she] was interviewed on March 19,1987.” Id.
A 1990 Board decision found that “the appellant, beyond a reasonable doubt, knowingly and deliberately, made and submitted to ... VA false statements concerning her marital relationship with Augusto in obtaining VA benefits to which she had no legal entitlement,” and declared that she “had forfeited all rights, claims and benefits under all laws administered by ... VA (except laws pertaining to insurance benefits),” and denied revocation of forfeiture. R. at 324-26. She did not appeal, and that decision became final.
Since the 1990 decision, Mrs. Trilles has attempted to reopen the forfeiture decision by asserting that a “real” marriage to Augusto never occurred. In support of her contention, she has offered a March 1989 certification from the Chief of the Certification Section of the Office of the Civil Registrar General, National Statistics Office, Republic of the Philippines, stating that that office could not verify any marriage between her and Augusto and that verification should be sought from the office of the local Civil Registrar, Iroson, Sorsogon, where marriage records are kept. R. at 315. She also submitted a similar certification dated September 1987 from the Office of the Civil Registrar General stating that it could not verify the death of Augusto Malapitan. R. at 330. The November 1996 Board decision here on appeal determined that the statements from the civil registrars were not previously of record and were, therefore, new. The Board also determined that although these statements were new, they had no probative value because they “do not show that the marriage and the death did not take place, merely that the records could not be located at a later date.” R. at 6. Moreover, the Board found that because the claims file already contained the marriage and death certificates at issue, the evidence presented was not sufficient to reopen Mrs. Trilles’ claim for revocation of the forfeiture of VA benefits. R. at 5-6. This appeal followed.
On August 5, 1998, there was a call for and the Court voted for full Court review of this appeal. On December 8, 1998, the full Court ordered additional briefing. Trilles v. West, 12 Vet.App. 59 (1998) (en banc order). On February 8, 1999, the Secretary responded to the Court’s order; he asserts that although declaration of forfeiture bars a person from receiving benefits, it was never contemplated by Congress or VA that the person could not attempt to reestablish eligibility for bene *317 fits either by presenting new and material evidence or by demonstrating clear and unmistakable error (CUE) in the previous decision declaring a forfeiture. Thus, he maintains that the new-and-material-evidence analysis adopted and conducted by the Board was proper and presents the correct question for review by the Court. Therefore, he contends that under Hodge v. West, 155 F.3d 1356 (Fed.Cir.1998), the matter must be remanded to the Board to determine, under 38 C.F.R. § 3.156 (1998), whether new and material evidence exists to reopen the matter.
Mrs. Trilles, through counsel, also argues that a Hodge remand is in order. She also asserts that a remand is required to allow the Board, in the first instance, to address the forfeiture questions raised in the Court’s briefing order.
II. ANALYSIS
A. Applicable Statutes and Regulations Concerning 38 U.S.C. § 6103(a) Forfeiture
Section 6103, title 38, U.S.Code, provides:
(a) Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).
(b) Whenever a veteran entitled to disability compensation has forfeited the right to such compensation under this section, the compensation payable but for the forfeiture shall thereafter be paid to the veteran’s spouse, children, and parents. Payments made to a spouse, children, and parents under the preceding sentence shall not exceed the amounts payable to each if the veteran had died from a service-connected disability. No spouse, child, or parent who participated in the fraud for which forfeiture was imposed shall receive any payment by reason of this subsection. An apportionment award under this subsection may not be • made in any case after September 1,1959.
(c) Forfeiture of benefits by a veteran shall not prohibit payment of the burial allowance, death compensation, dependency and indemnity compensation, or death pension in the event of the veteran’s death.
(d)(1) After September 1, 1959, no forfeiture of benefits may be imposed under this section or section 6104 of this title upon any individual who was a resident of, or domiciled in, a State at the time the act or acts occurred on account of which benefits would, but for this subsection, be forfeited unless such individual ceases to be a resident of, or domiciled in, a State before the expiration of the period during which criminal prosecution could be instituted. This subsection shall not apply with respect to (A) any forfeiture occurring before September 1, 1959, or (B) an act or acts which occurred in the Philippine Islands before July 4,1946.
(2) The Secretary is hereby authorized and directed to review all cases in which, because of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, a forfeiture of gratuitous benefits under laws administered by the Secretary was imposed, pursuant to this section or prior provisions of law, on or before September 1, 1959. In any such case in which the Secretary determines that the forfeiture would not have been imposed under the provisions of this section in effect after September 1, 1959, the Secretary shall remit the forfeiture, effective June 30, 1972. Benefits to which the individual concerned becomes eligible by virtue of *318 any such remission may be awarded, upon application therefor, and the effective date of any award of compensation, dependency and indemnity compensation, or pension made in such a case shall be fixed in accordance with the provisions of section 5110(g) of this title.
38 U.S.C. § 6103.
Section 501 of title 38, U.S.Code, provides:
(a) The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including—
(1) regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws;
(2) the forms of application by claimants under such laws;
(3) the methods of making investigations and medical examinations; and
(4) the manner and form of adjudications and awards.
(b) Any rule, regulation, guideline, or other published interpretation or order (and any amendment thereto) issued pursuant to the authority granted by this section or any other provision of this title shall contain citations to the particular section or sections of statutory law or other legal authority upon which such issuance is based. The citation to the authority shall appear immediately following each substantive provision of the issuance.
38 U.S.C. § 501(a), (b). Under the Secretary’s section 501 authority, VA regulations have been prescribed to establish adjudicative procedures for rendering forfeiture decisions. These implementing regulations are supplemented by VA manuals and internal memoranda on how forfeiture decisions are to be made, including specific procedural protections that are to be afforded to a VA benefits recipient (and to a claimant for VA benefits). These regulations have remained substantially the same since they were promulgated in the early 1960s. See 38 C.F.R. §§ 3.900 through 3.905 (1998) at Appendix. The Court notes that in 1953, VA Regulation No. 2907(B) was promulgated to ensure that VA applied these provisions “only in those cases wherein it is established beyond a reasonable doubt that fraud has been committed.” See VA Regulations Claims Transmittal Sheet 96, p. 157 (May 13, 1953), excerpted at Secretary’s Response, Exhibit E, page 5 (emphasis added). Although no longer prescribed by regulation, VA adheres to this beyond-a-reasonable-doubt standard. R. at 3, 295, 324.
To address forfeiture cases arising outside the United States, where prosecution under the U.S. criminal code and the attendant procedural rights for the accused could not be relied upon, VA promulgated specific procedures for adjudicating allegations of fraud. Specifically, cases arising from acts by benefits recipients residing in the Philippines are to be adjudicated under Chapter 36, VA Adjudication PROCEDURE Manual, M21-1 [hereinafter Manual M21-1]. Under these provisions, the Manila VA Regional Office (RO) conducts a preliminary adjudication of the alleged forfeiture and, if established, forwards the matter to the Director, Compensation and Pension Service, VA Central Office. See 38 C.F.R. §§ 3.100(b), 3.905(a) (1998); see also Manual M21-1, Part IV, ¶ 36.08a (Apr. 3, 1992). Forfeiture will not be declared before the RO has sent to the person affected a written notice containing the following: (1) A statement of the specific charges, (2) a detailed statement of evidence supporting the charges, (3) notice of the right to submit evidence or a statement in rebuttal or explanation within 60 days, (4) citation and discussion of the applicable statute, and (5) notice of the right to a hearing and representation by counsel. See 38 C.F.R. § 3.905(b). Only *319 after such a notice is a forfeiture decision to be made.
A declaration of forfeiture, which affects the provisions of VA benefits, is one that is a decision referred to in section 511 of title 38, U.S.Code. This statute provides:
(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.
(b) The second sentence of subsection (a) does not apply to—
(1) matters subject to section 502 of this title;
(2) matters covered by section 1975 and 1984 of this title;
(3) matters arising under chapter 37 of this title; and
(4) matters covered by chapter 72 of this title.
38 U.S.C. § 511. Further, section 7104(a) provides: “All questions in a matter which under section 511(a) is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board.” 38 U.S.C. § 7104(a). In forfeiture cases, as in claims for VA benefits, see Cox v. West, 149 F.3d 1360 (Fed.Cir.1998) (“section 7104 of title 38 confers jurisdiction on the Board over questions arising under section 511(a), and a claimant may in turn appeal an adverse Board ruling to the Court of Appeals for Veterans Claims under 38 U.S.C. § 7252(a) (1994)”), sections 511 and 7104 give the person adversely affected the right to appeal the forfeiture decision to the Board. Thus, as with claims for VA benefits, the Secretary has promulgated rules allowing for final forfeiture decisions to be reopened upon the presentment of new and material evidence or upon a showing of CUE in a previous final decision. See 38 C.F.R. §§ 3.104(a), 3.105, 3.905(d), 20.1103, 20.1104 (1998).
B. Applicable Case Law and Analysis
Over the years, the Court has considered the question of VA forfeitures under 38 U.S.C. §§ 6103 and 6104. Section 6104 provides for forfeiture of VA benefits in cases involving treasonous acts. For these section 6104 cases, the Secretary has promulgated administrative adjudication procedures similar to those governing section 6103 cases. See 38 C.F.R. §§ 3.902, 3.904(b) (1998).
In Reyes v. Brown, the Court considered the case of a veteran’s widow seeking to reopen her claim to remove VA’s forfeiture of her VA benefits. Reyes, 7 Vet.App. 113, 114-15 (1994). She had been receiving VA benefits since 1942. Id. In 1962, VA declared forfeiture of her benefits under section 3503(a) (now 6103(a)) because she had concealed the fact that she was living in a marital relationship with Esteban Oblena. Id. In 1970, she unsuccessfully sought restoration of her VA benefits. In 1991, she sought to reopen her claim by submitting Oblena’s death certificate. The Board determined that the evidence submitted was not new and material and denied reopening. She appealed. Applying a new-and-material-evidence standard under 38 U.S.C. § 5108, the Court, on de novo review, also found that the evidence presented was not new and material and held that the Board did not err by not reopening the appellant’s claim. Id. at 115-16.
In Villaruz v. Brown, the Court again employed a new-and-material-evidence reopening analysis. Villaruz, 7 Vet.App. 561 (1995). In Villaruz, the appellant’s rights to VA benefits had been declared forfeited in 1956 because he had been found to have made false or fraudulent statements to VA and to have rendered assistance to the enemy. Id. at 563. In 1983, the appellant sought to reopen his claim for revocation *320 of the forfeiture and provided additional evidence. Id. The Board found that the appellant had submitted new and material evidence sufficient to reopen his claim, but decided after reopening that the evidence was insufficient to revoke the forfeiture of benefits under 38 U.S.C. §§ 6103 and 6104. Id. at 564. The Court held, on de novo review, that the Board did not err in reopening the appellant’s claim for revocation of a forfeiture, id. at 565, but vacated the Board decision and remanded the matter to the Board to provide an adequate statement of reasons or bases in assessing the credibility of the appellant’s new evidence, id. at 567.
However, in Villeza v. Brown, the Court, after determining that the appellant was indeed seeking to reopen the forfeiture question, departed from recognizing that question as one requiring the presentment of new and material evidence. Villeza, 9 Vet.App. 353, 355-57 (1996). Rather, the Court determined that because the appellant’s benefits had been declared forfeited, she was not a “benefits-eligible claimant” and then held that she no longer possessed eligibility status. Id. at 357. Relying on Aguilar v. Derwinski, 2 Vet.App. 21, 23 (1991) (holding “[a]s a threshold matter, one claiming entitlement as the spouse of a veteran has the burden to come forward with preponderating evidence of a valid marriage under the laws of the appropriate jurisdiction”), the Court held that the appellant had to establish her status as a claimant by a preponderance of the evidence. Villeza, 9 Vet.App. at 357.
The Court extended the preponderance-of-the-evidence burden further still in Tulingan v. Brown, 9 Vet.App. 484 (1996). In Tulingan, the veteran was granted service connection for a wound sustained in 1949. Id. at 485. Later, VA determined that he had either directly or indirectly rendered aid to the enemy and had thereby forfeited his VA benefits. Id. Tulin-gan’s VA benefits were restored in 1965 and declared forfeited again fifteen years later when the 1965 restoration was found to be the result of CUE. Id. Tulingan again attempted to regain his benefits. In the early 1990s, the Board concluded that he had not submitted new and material evidence. He appealed to this Court, which concluded that he had submitted new and material evidence and that the Board must reopen the claim and evaluate it in light of all the evidence, both old and new. Id. at 486. On remand, the Board reviewed the evidence and sustained the forfeiture. On appeal again, the Court treated the case differently from the way it had previously treated it. The Court ruled that “where a veteran has lost his status as a benefits-eligible claimant, he must establish it anew by a preponderance of the evidence.” Id. at 487 (citing Villeza, supra). The Court held that the Board did not err in sustaining the forfeiture. Id.
In none of these precedential cases did the Court recognize or discuss the VA regulatory procedures established for forfeiture cases. Rather, in the more recent cases the Court created a procedural concept that required stripping a benefits recipient or a claimant of his or her title 38 status and mandated that the person establish status anew by a preponderance of the evidence. Because the Court failed to consider the promulgated VA forfeiture procedures, the same procedures relied upon by the parties in this case, we now must revisit the forfeiture cases and review them in the context of the statute and implementing regulations to determine if these longstanding regulations and those court decisions are in accord with the statutory scheme.
C. Discussion

1. Statutory Construction

As noted earlier, both parties maintain that, although a section 6103 forfeiture in effect bars a person from rights, claims, and benefits under title 38, it was not Congress’ intent to preclude permanently a person from challenging the basis for the forfeiture decision under procedures established by the Secretary. Deciding the cor *321 rectness or incorrectness of this position requires the Court to interpret the statute as a whole and to determine the reasonableness and validity of VA’s implementing regulations.
The proper interpretation of a statute is to be made by the Court de novo. See Butts v. Brown, 5 Vet.App. 532, 539 (1993) (en banc). The starting point in interpreting a statute is examining the language itself, for “if the intent of Congress is clear, that is the end of the matter.” Cacatian v. West, 12 Vet.App. 373, 376 (1999) (citing Gardner v. Brown, 5 F.3d 1456, 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). The plain meaning of the statute is found in examining the specific language at issue and the statute’s overall structure. Id.; see also Meeks v. West, 12 Vet.App. 352, 354 (1999) (“Principles of statutory construction require that, where a statute has plain meaning, a Court shall give effect to that meaning.... [E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.” (internal quotations and citations omitted)). However, if “it is clear that ... the literal import of the text ... is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results,” NormaN j. Singer, SutherlaNd on Statutory Construction § 46.07 (5th ed.1992), the Court will not reach that result. See United States v. Brown, 333 U.S. 18, 25-26, 68 S.Ct. 376, 92 L.Ed. 442 (1948); Brooks v. Donovan, 699 F.2d 1010, 1011-12 (9th Cir.1983); Demko v. U.S., 44 Fed.Cl. 83, 87 (1999).
The language of section 6103 plainly states that a person who commits fraud in connection with his or her claim or award of benefits, loses all rights, claims, and benefits. However, it is completely silent on the forfeiture process and whether Congress intended that a section 6103 bar would forfeit procedural rights so as to prevent the affected person from ever revisiting or again contesting the basis for the forfeiture decision. We do not find a clear intent of Congress manifested in the statute as to either of these matters. Moreover, were we to conclude that the statute itself, literally read, provided for the forfeiture of procedural rights afforded under title 38 of the United States Code and the Code of Federal Regulations, we would hold that to be an absurd result when considering the statute’s overall structure and concepts of fundamental fairness and would proceed to examine the legislative history. As the U.S. Supreme Court reasoned in Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948), in a similar context:
Such a forfeiture [loss of permanent residency and deportation] is a penalty. To construe this statutory provision less generously to the [person] might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.
Therefore, we proceed to examine the legislative history in order to clarify what procedure is contemplated.

2. Legislative and Administrative History

A review of the legislative history of the 38 U.S.C. § 6103(a) forfeiture provisions indicates that the current version is derived from Pub.L. No. 85-857, 72 Stat. 1105, 1240 (1958) (originally codified at 38 U.S.C. § 3503). In 1959, this forfeiture provision was amended, Pub.L. No. 86-222, § 1, 73 Stat. 432 (1959), in part, to eliminate the authority of the VA Administrator (now the Secretary of Veterans Affairs) to impose forfeiture on a person who had committed a fraudulent act when he or she resided, or was domiciled, in a State between the time of the commission of the fraud and the expiration of the applicable criminal statute of limitations. See S. Rep. No. 664 (1959), reprinted in 1959 U.S.C.C.A.N. 2216-22. When con *322 sidering this amendment, Congress expressed its desire to alleviate its concern that forfeiture was a severely harsh, dupli-cative punishment; “impos[ed] ... additional penalties ... comparable ... to other governmental agencies”; and was applied inequitably within VA. Id. at 2220. It was believed that administrative forfeiture cases within the United States could be eliminated in favor of reliance upon prosecuting fraud under the U.S. criminal code. Id. at 2219-20. Further, it was noted that no other Federal benefits structure permitted prosecution and administrative forfeiture for filing false or fraudulent statements in connection with applying for or receiving the benefits. Id. at 2220. In the course of the legislative process that brought about the liberalization of this forfeiture provision, specific recommendations were made concerning the review of the forfeiture procedure. Among the recommendations was one that “changes in the forfeiture program should be implemented by appropriate changes in the law and Veterans’ Administration administrative regulations.” Staff of House Comm. on Veterans’ Affairs, Forfeiture of Veterans’ Rights, 85 Cong., 2d Sess., 3 (Comm. Print 196, June 26, 1958). Moreover, it was commented that a permanent bar would be too severe a penalty because the administrative forfeiture procedure did not have the built-in safeguards of a trial. Id. at 7-8. Notwithstanding these concerns and the amendment, a person who had been found to commit fraud while not residing or being domiciled in a State remained subject to the forfeiture. See 38 U.S.C. § 101(20) (defining a state as “each of the several States, Territories, and possessions of the United States, the District of Columbia, and the Commonwealth of Puerto Rico.”). Additionally, section 6103(d)(1) authorizes forfeiture actions for acts occurring in the Philippine Islands after July 4, 1946, the date of Philippine independence from its previous status as a territory of the United States. Thus, Philippine citizens remained subject to forfeiture declarations under section 6103(d)(1) for their fraudulent acts in connection with applying for or receiving VA benefits.
Historically, VA has treated attempts to overturn forfeiture declarations as claims to revoke these forfeitures. Therefore, under VA practice, when one attempts to have forfeited benefits restored, he or she is attempting to reopen a claim for revocation of forfeiture (i.e., to reopen the decision that declared a forfeiture of benefits). Despite some inconsistent terminology, the action is essentially one to reopen the forfeiture matter in a procedure similar to reopening disallowed claims for VA benefits as mandated by 38 U.S.C. § 5108. See VA Regulation 1530(D) (Sept. 13, 1935) (authorizing VA’s Central Committee on Waivers and Forfeitures “[t]o review and modify its decision upon the submission of new evidence”); VA Regulation 2910(F) (May 13, 1953) (authorizing VA’s Central Committee on Waivers and Forfeitures to “review and modify its decisions upon the receipt of new and material evidence, or upon [CUE]”).
The Secretary’s February 1999 response includes the following statement concerning the congressional history behind the enactment of section 6103.
In the report of a hearing concerning the 1959 legislation, a special subcommittee of the House Committee on Veterans’ Affairs reproduced a 1956 VA pamphlet (VA Pamphlet 8-1) detailing the rules of procedure governing forfeiture determinations by the Board on Waivers and Forfeitures, the organization within VA’s Department of Veterans Benefits which then had authority to make forfeiture determinations. Forfeiture of Veteran Benefits: Hearings on H.R. 7106 Before a Special Subcomm. of the House Comm. On Veterans’ Affairs, 86th Cong., 1st Sess. 258-63 (1959).... Sections 39 and 40 of that pamphlet expressly provided, respectively, that declarations of forfeiture could be reconsidered on the basis of new and material evidence or allegations of error in the *323 forfeiture decision. Id. at 263.... [Provisions authorizing review of otherwise final forfeiture decisions had been included in VA regulations since 1935.... VA Regulation 2910(f) (May 13, 1953); ... 38 C.F.R. § 5.10(f) (1956) (same as VA Regulation 2910(f))....
Response at 3-5.
Although VA’s regulations do not expressly state the method of review of final forfeiture decisions, 38 C.F.R. § 3.905(d) does provide that “[a] decision of forfeiture is subject to the provisions of § 3.104(a).” Section 3.104(a) recognizes the finality of decisions by an agency of original jurisdiction and provides that a “final and binding agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities or except as provided in § 3.105 of this part.” 38 C.F.R. § 3.104(a) (1998). Section 3.105 permits revision of a final decision based on CUE. 38 C.F.R. § 3.105 (1998). The language of section 3.104(a), “shall not be subject to revision on the same factual basis,” is similar to the language of 38 U.S.C. § 7104(b), which allows reopening upon the presentment of new and material evidence, as provided for in 38 U.S.C. § 5108, of a claim previously disallowed by the Board. See also 38 C.F.R. § 3.156 (1998). The above provisions, promulgated by the Secretary, thus authorize revoking a forfeiture declaration because of CUE in that earlier decision declaring forfeiture or on the basis of new and material evidence.

3. Deference to the Secretary’s Interpretation of Statute and Regulations

It is the duty of this Court to “decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary.” 38 U.S.C. § 7261(a)(1). Essentially, the Secretary urges the Court to reconcile the conflicting forfeiture case law and to defer to VA’s forfeiture procedures as a reasonable interpretation of a statute in which Congress was silent concerning the procedures for adjudicating and declaring forfeiture of benefits. In Chevron v. Natural Resources Defense Council, the United States Supreme Court recognized that Congress frequently leaves certain details unspecified in a statutory scheme, and delegates rulemaking authority to an agency to fill in the details necessary to administer the statute. Chevron, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Secretary has that authority under section 501 and has promulgated regulations and procedures. “Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.” Id. at 843-44, 104 S.Ct. 2778; see also Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); Hodge v. West, 155 F.3d 1356, 1360-61 (Fed.Cir.1998). In Chevron, the Supreme Court provided the following guidance to reviewing courts:
When a court reviews an agency’s construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.
Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778 (footnotes omitted). The Secretary argues as to Congressional intent:
*324 Nothing in the language or history of the 1959 statute expressly addressed the validity of the VA procedures concerning review of forfeiture decisions based on new and material evidence or [CUE]. However, Congress’ awareness of the provisions permitting such review, coupled with Congress’ stated concerns that forfeiture was a severe penalty and that inequities existed in VA’s administration of the forfeiture provisions, may suggest that Congress did not intend to insulate forfeiture decisions from review under the generally available mechanisms for reopening or revising otherwise final VA decisions.
Secretary’s Response at 4-5.
The Court is persuaded that the Secretary’s view of Congress’ intent in enacting this statute has merit. A conclusion that a forfeited benefits recipient or claimant would be permanently barred from filing future claims for other benefits or from challenging the basis of the forfeiture decision is not supported when construing every part or section of the statute and would yield an absurd result. After close scrutiny of all provisions of section 6103, what becomes most clear is Congress’ intent as expressed in the legislative history to ameliorate the severe and draconian nature of the forfeiture statute. Moreover, as the legislative history demonstrates, and as pointed out by the Secretary and the appellant, Congress reviewed and did not express any disapproval with the then-current VA adjudicative forfeiture procedures promulgated by the Secretary. See ForfeituRE of Veteran Benefits: Hearings on H.R. 7106 Before a Speoial Subcomm. of the House Comm. On Veterans’ Affairs, 86th Cong., 1st Sess. 258-63 (1959) (House Committee’s detailed description and reproduction of pamphlet outlining VA procedures covering forfeiture decisions). That Congress intended no blanket forfeiture is evidenced by subsections (b) and (c) of section 6103. For example, disability compensation continues in a determined amount to eligible family members who did not participate in the fraudulent act; likewise, a veteran who has forfeited rights under section 6103 does not forfeit the right to a burial allowance or the right for his qualified and eligible dependents to claim death compensation, dependency and indemnity compensation, or death pension. See 38 U.S.C. § 6103(b) and (c).
As the foregoing discussion illustrates, Congress did not address the precise question of the procedures to be followed in forfeitures. When Congress was considering amending the statute, VA already had established procedures in place of which Congress was fully aware and to which Congress had given tacit approval. See Helvering v. R.J. Reynolds Tobacco Co., 306 U.S. 110, 114-15, 59 S.Ct. 423, 83 L.Ed. 536 (1939) (where Department of Treasury had embodied administrative construction of definition of “gross income” in regulations and where Congress had not amended statutory definition of “gross income” in successive revenue acts, “Congress must be taken to have approved the administrative construction and thereby to have given it force of law”); see also Cammarano v. United States, 358 U.S. 498, 510-11, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959) (failure of legislative body to amend ambiguous statute when agency adopted unambiguous regulation interpreting that statute supported “conclusion that the regulation was not inconsistent with the intent of the statute” (internal quotations and citations omitted)); York v. Fed. Home Loan Bank Bd., 624 F.2d 495, 499 (4th Cir.1980) (in view of “deference which is to be accorded an agency’s construction of the statute it is authorized to enforce” and fact that Congress had been apprised of Bank Board’s actions by agency itself, court held that “by declining to act despite the Bank Board’s known policy ..., Congress has tacitly approved the ... action”).
In general, this Court defers to a regulatory construction of a statute that is adopted by the Secretary if that construction is consistent with the language of the *325 statute and is a reasonable interpretation of the law. See McGuire v. West, 11 Vet.App. 274, 278-79 (1998). Additionally, the “Supreme Court has counseled that special deference must be accorded to an agency’s contemporaneous interpretation of its founding statutes, especially when the interpretation has remained in effect for a long period of time and Congress has never expressed its disapproval.” Lorenzano v. Brown, 4 Vet.App. 446, 450 (1993) (citing EEOC v. Associated Dry Goods Corp., 449 U.S. 590, 600 n. 17, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981)). In revising and refining the forfeiture statute, Congress left untouched VA’s preexisting interpretation and historical procedures implementing that statute. The Secretary has acted within his statutory authority under 38 U.S.C. § 501 in establishing regulations for forfeiture adjudications and for their revision by reopening forfeiture declarations upon the presentment of new and material evidence or by findings that there was CUE in the previous forfeiture decision. Reviewing the VA regulations and the Secretary’s forfeiture review practices in this context and mindful of the penal nature of forfeiture, see Fong Haw Tan, supra, we hold that they are promulgated under a permissible construction of the statute and constitute plausible and reasonable interpretations of the law. See Winn v. Brown, 8 Vet.App. 510, 515 (1996) (citing Chevron)', Lorenzano, supra. Therefore, we will follow the Supreme Court’s counsel and accord special deference to those VA interpretations and read the statute so as to impose its penalties no more broadly than “that which is required by the narrowest of several possible meanings of the words used.” Fong Haw Tan, supra.
Because we defer to the Secretary’s regulations, our previous holdings in forfeiture cases that did not accord such deference lose their validity. By not recognizing in those cases the Secretary’s forfeiture regulations and procedures and determining if they reasonably interpret the statute, the Court improperly negated them. See Chevron, supra; Hodge, 155 F.3d at 1364 (holding that this Court erred in not applying VA regulation 38 C.F.R. § 3.156(a) on reopening disallowed claims). Accordingly, we must overrule these decisions (Villeza and Tulingan, both supra) where the Court has failed to recognize the regulatory adjudicative procedure and in its decisions has held that the appellant has lost status as a benefits-eligible claimant. We now hold that a VA benefits recipient or claimant who has been the subject of a final decision declaring forfeiture of eligibility for VA benefits may have that final decision reopened upon the presentment of new and material evidence or revised based on a finding of CUE in the original forfeiture decision.
D. Applying the New-and-Material-Evidence Standard to Reopen Declarations of Forfeiture
In this case, the Board applied the criteria for reopening on the basis of new and material evidence enunciated in Colvin v. Derwinski, 1 Vet.App. 171, 174 (1991) (requiring that “material” evidence be “relevant [to] and probative of the issue at hand” and present a “reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome”). See also Sutton v. Brown, 9 Vet.App. 553, 562 (1996); Evans v. Brown, 9 Vet.App. 273, 283 (1996); Cox v. Brown, 5 Vet.App. 95, 98 (1993); Justus v. Principi, 3 Vet.App. 510, 513 (1992). However, the Colvin materiality test was overruled by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in Hodge for purposes of reopening disallowed claims for veterans’ benefits. Hodge, supra. In Hodge, the Federal Circuit held that the VA regulation on reopening, 38 C.F.R. § 3.156(a), provided a reasonable interpretation of the materiality requirement of 38 U.S.C. § 5108 “for purposes of reopening claims for the award of veterans’ benefits.” Id. at 1362. Recognizing the pro-claimant environment created by the general VA stat *326 utory scheme, the Federal Circuit determined that the application of concepts such as were involved in the Social Security adjudication process, which the Federal Circuit characterized as a system that was not designed to be “strongly and uniquely pro-claimant” — in this instance a requirement that there must be a reasonable possibility that new evidence would change the outcome of the claim — was inappropriate. The Federal Circuit expressed a concern that applying such a strict standard to the VA nonadversarial process might undermine the intended operation of the veterans’ benefits system by altering its traditional beneficial character. Id. at 1356-57.
Under currently applicable law, then, the Secretary must reopen a previously and finally disallowed claim when “new and material evidence” is presented or secured. See 38 U.S.C. §§ 5108, 7104(b), 7105(c); 38 C.F.R. § 3.156(a) (1998). When a claim to reopen is presented under section 5108, an analysis is triggered that may entail three steps. See Winters v. West, 12 Vet.App. 203, 206 (1999) (en banc). The first step involves a determination as to whether the evidence presented or secured since the last final disallowance of the claim is new and material. See 38 C.F.R. § 3.156(a). If the Secretary determines that the evidence is new and material, he must then reopen the disallowed claim and determine “whether the appellant’s claim, as then reopened, is well grounded in terms of all the evidence in support of the claim, generally presuming the credibility of that evidence”. Elkins v. West, 12 Vet.App. 209, 218-19 (1999) (en banc); see also Winters, 12 Vet.App. at 206-07. If the claim is not well grounded, that is the end of the matter. See Winters, 12 Vet.App. at 206. The Board in the November 14, 1996, decision on appeal determined that the evidence submitted by Mrs. Trilles, although new, was not probative of the issue whether she had committed fraud. Hence, the Board decided that the new evidence was insufficient to reopen her claim.
Against the backdrop of Hodge and El-kins, we must decide the appropriate remedy for this case. The Court acknowledges that efforts to overturn forfeiture decisions do not fit perfectly into the case law applicable to the nonadversarial VA claims adjudication process. As discussed in part II.C., above, the Secretary has determined that the decision to declare a forfeiture can be revisited on specific allegations of CUE in the previous forfeiture declaration or when new and material evidence has been presented. Although these concepts of CUE and reopening on the basis of new and material evidence are generally associated with the VA pro-claimant nonadversarial claims adjudication process, see Hodge, 155 F.3d at 1361 n. 1 (citing Brown v. Gardner, 513 U.S. 115, 117-18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)), forfeiture action is an adversarial process initiated by the Secretary to protect the public fisc from false or fraudulent claims and it must be declared “beyond a reasonable doubt.” Because of its adversarial nature, the forfeiture process is not unlike the procedure for reopening verdicts in the criminal sector and adverse decisions by most administrative agencies. In criminal cases, it has been held that a new trial must be granted only when the new evidence is material, that is, when there is a “reasonable probability that ... the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In somewhat adversarial administrative arenas, such as adjudications by the Social Security Administration, in order to reopen a previous decision there must be a “reasonable possibility that [the new evidence] would have changed the outcome of the Secretary’s determination.” Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981); see Cox, 5 Vet.App. at 99 (summarizing Social Security law in ten Circuits and concluding that “reasonable possibility” of outcome change test “represents the unanimous view of all *327 ten circuit courts of appeals that have addressed this aspect of the standard for reopening [Social Security Disability] cases on the basis of ‘new and material’ evidence”); see also Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993) (showing that eleven circuits have now adopted that test). Here, VA declared forfeiture against Mrs. Trilles (after having afforded her the procedural protections that normally accompany adjudications that may result in adverse decisions) only after she was found beyond a reasonable doubt, a standard much higher than the one involved in claims adjudication, to have committed acts requiring forfeiture of her benefits.
Nevertheless, and in light of Hodge and Elkins, both supra, because of our deference to the Secretary’s procedures for deciding cases involving revocation of forfeitures, the Court believes that it would be a preferable procedure, as the parties urge, for the Secretary and the Board first to have an opportunity to address, in light of the adversarial nature of VA forfeiture, discussed above, what constitutes new and material evidence under 38 C.F.R. § 3.156(a) and 38 U.S.C. § 5108 for purposes of reopening prior forfeiture decisions. Cf. Carbino v. Gober, 10 Vet.App. 507, 511 (1997) (declining to address matter not addressed by the Board and noting that declination is also based on the belief that the “Secretary, the Board, and the General Counsel ought first to address the issue”). Therefore, we will vacate the Board decision pursuant to Elkins and Hodge, both supra, and remand for read-judication in order for the Secretary and the Board to address in the first instance what evidence is required for Mrs. Trilles to reopen the VA-benefits-eligibility forfeiture imposed upon her by evidence found to show beyond a reasonable doubt that she had committed fraud in seeking such benefits.
III. CONCLUSION
Accordingly, the order denying relief contained in the Board’s November 14, 1996, decision is VACATED and the matter is REMANDED for expeditious read-judication consistent with this opinion. See Allday v. Brown, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with Kutscherousky v. West, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. See Stegall v. West, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. See Marsh v. West, 11 Vet.App. 468, 472 (1998).
VACATED AND REMANDED.