Citation Nr: 1706051 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 12-26 128 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines


THE ISSUE

Entitlement to revocation of forfeiture of eligibility for Department of Veterans Affairs (VA) benefits.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Andrew Mack, Counsel



INTRODUCTION

The Veteran in this matter had active duty from December 1941 to April 1942. He died in a concentration camp in the Philippines in April 1942. The appellant is the widow of the Veteran. 

This appeal is before the Board of Veterans' Appeals (Board) from a July 2010 decision of the Manila, Republic of the Philippines, VA Regional Office (RO). In that decision, the RO determined that new and material evidence had not been received to reopen a final decision declaring forfeiture of eligibility for VA benefits. 

In September 2013, the Board denied the claim to reopen on the grounds that no new and material evidence had been received since the most recent final decision in May 2005. The appellant appealed to the United States Court of Appeals for Veterans Claims (Court). The Court issued a November 2014 Memorandum Decision vacating the Board's September 2013 decision and remanding the matter to the Board. In June 2015, the Board reopened and remanded the appellant's claim for revocation of forfeiture.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The evidence shows beyond any reasonable doubt that the appellant knowingly made false and fraudulent affidavits, declarations, and statements concerning her claims for VA benefits.



CONCLUSION OF LAW

The criteria for revocation of forfeiture of eligibility for VA benefits have not been met. 38 U.S.C.A. § 6103(a) (West 2014) [formerly 38 U.S.C.A. § 3503(a) (1975)]; 38 C.F.R. § 3.901 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, notice was provided in October 2009 and July 2016 letters. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006); Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). While the letters did not inform the appellant of the specific criteria to substantiate her claim for revocation of forfeiture, this was substantially explained in both the October 2009 letter and an August 2016 supplemental statement of the case, to which the appellant submitted a written response in December 2016. Moreover, the record, including this December 2016 response and previous statements from the appellant that had resulted in the reopening of her previously denied claim, demonstrates that she had actual knowledge of the evidence required to substantiate the claim at issue. See Shinseki v. Sanders, 556 U.S. 396, 409-13 (2009).

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service records, including records of his death, two VA field examinations, and numerous depositions, affidavits, and other statements from the appellant and others regarding the matter on appeal have been obtained. Moreover, as discussed below, the agency of original jurisdiction (AOJ) substantially complied with the Board's June 2015 remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 104-106 (2008); Stegall v. West, 11 Vet. App. 268 (1998).

Therefore, VA has satisfied its duties to notify and assist, and there is no prejudice to the appellant in adjudicating this appeal. 

II. Factual Background

The Veteran died while a prisoner of war in a Japanese concentration camp in April 1942 and the appellant was awarded dependency and indemnity compensation (DIC) benefits as the unremarried widow of the Veteran. In April 1963, an inquiry was initiated as to whether she should continue to be recognized as the Veteran's unremarried widow for purposes of DIC. 

A field examination conducted in April 1963 included a deposition from the appellant. She stated that she had not remarried after the Veteran's death, but had lived as a wife first with V.C., now deceased, and then with E.M., for about 6 years and was living with the latter individual at the time of the deposition. Specifically, when asked, she responded that she represented E.M. as her husband, and that she was known and reputed to be his wife. It was noted by the examiner that E.M. was interviewed and admitted that the appellant had been his wife for the past seven years, even though they had not legally been married. Depositions were also taken from several acquaintances and neighbors, noted to have been disinterested in the appellant's claim for VA benefits, as well as the Veteran's brother; these essentially reflect that the appellant and E.M. had lived for at least five years together with their children as wife and husband and publically held themselves out as husband and wife. 

Based on the evidence obtained, the RO determined that the appellant could not be recognized as the widow of the decedent Veteran for payment of DIC benefits because of her relationship with E.M. Her award of DIC was terminated as of September 19, 1962. 

The appellant appealed the decision, and in March 1964 the Board denied the appeal. The basis for the denial was that the appellant was living with another man and holding herself out openly to the public to be the wife of such other man. The Board further noted that, although official records did not show that the appellant was remarried, she acknowledged representing E.M. as her husband in the community, and had four children by E.M. from 1957 to 1962. In June 1964, the Board denied her motion for reconsideration. 

In an April 1964 signed affidavit, the appellant stated that she was not living or staying with any man and that, since the Veteran's death, she had never held herself openly or publicly as the wife of anyone or represented any man to be her husband. She stated that she was induced by the VA field examiner in April 1963 to provide statements to the contrary during her deposition. In several subsequent written statements, including an October 1965 statement, the appellant continued to assert that she had never held any man out as her husband following the death of the Veteran. Also, she submitted a September 1964 affidavit signed by two acquaintances stating that the appellant had never publically or openly held E.M. out as her husband. 

In March 1971, the appellant sought restoration as a widow for benefits purposes under Public Law No. 91-376. She submitted a statement in October 1972, in response to an April 7, 1971, inquiry from VA, wherein she stated that her common-law husband had left her sometime in 1962 when her benefits were terminated, and that, since then, she had not seen him or heard about him. Regarding the questions of whether she was living as if they were married on January 1, 1971, even though no marriage ceremony was performed, and whether she was living with anyone at that time as if they were married, even though no ceremony had been performed, she responded "No." 

A December 1973 memorandum of interview indicates that the appellant's daughter stated that the appellant was presently cohabitating with E.M., and that they were not legally married, but were living together as husband and wife. She further stated that the appellant had not separated from E.M., that E.M. was supporting the appellant, and that the reputation of the appellant was as the wife of E.M.

A field examination was undertaken and a deposition was taken from the appellant in November 1974. She stated that she had lived with E.M. in a husband and wife relationship from the time of the last VA investigation in 1961 or 1962 up to September 1972, when they separated. The appellant said she had legally married only the Veteran. She repeated that she had totally ended her marital relationship with E.M. in September 1972. It was noted by the examiner that the appellant "did not appear to grasp the need to tell the truth," "wanted only to get back her pension," and "that [the appellant] often asked [the examiner], before she answered, what her answer should be."

The field examiner also took depositions from several other neighbors and acquaintances of the appellant, disinterested in her claim, which reflect that the appellant and E.M. lived together with their children, acted as husband and wife, and publically held themselves out as husband and wife, although the appellant had been absent since earlier in the year.

The field examiner noted that, based on statements from a considerable number of people who were well acquainted with her, it had been confirmed that such relationship had continued before and after April 1971. He further noted that he found E.M. in the house where he lived together with the appellant and their children. While it was noted that E.M. stated that he and the appellant had long separated and had long ended any marital relationship, and that he appeared evasive and untruthful and reluctant to have his deposition taken.

In an administrative decision dated in March 1975, the RO found that the evidence clearly established that the appellant had deliberately presented false and material evidence to VA when she declared in her October 1972 statement that she had not lived with any man in the relationship of husband and wife since April 1971. Evidence obtained during the investigation established that her relationship with E.M. had continued before and after April 1971, up to the time of the decision. The RO concluded that the claimant knowingly and with intention to secure benefits did furnish false and fraudulent evidence of unremarried widow status for the purpose of having her benefits restored under the provisions of Public Law No. 91-376. It was recommended that the widow's statements of October 1972 and November 1974 regarding her marital status be held to be material and false. It was also recommended that the matter be presented to the Director of the Compensation and Pension (C&P) Service for forfeiture consideration. 

A forfeiture decision in July 1975 noted that the evidence of record established that the appellant had forfeited all rights, claims, and benefits to which she might otherwise be entitled under laws administered by the Veterans Administration (except the law pertaining to insurance benefits). The records showed that she had been living in a husband-wife relationship with E.M. before and after January 1, 1971, and had continued to live with him up to at least 1974. The decision indicated that the evidence established beyond a reasonable doubt that she had knowingly and intentionally presented or caused to be furnished to VA materially false and fraudulent statements and evidence in support of her claim for death benefits as the unremarried widow of the decedent Veteran, to which she had no legal entitlement, thus violating the provisions of the forfeiture statute (then Section 3503(a), Title 38, United States Code). 

The appellant never perfected her appeal of the July 1975 forfeiture decision. In September 1976 she wrote that "instead of appealing, I beg to apply for the restoration of my forfeited benefits under the provisions of Public Law 92-328 granting restoration of the widow's benefits which was previously forfeited." She was advised in November 1976 that Public Law No. 92-328 did not apply in her case because she was not within the jurisdiction of the federal criminal statutes of the United States. That law applied, generally, to citizens of the United States who committed fraudulent acts in the United States. 

In February 1976, and in subsequent statements, the appellant again denied having lived in a husband-wife relationship with E.M., before and after January 1, 1971, and continuing to live with him up to at least 1974.

Since April 1981 the appellant has requested restoration of her previous DIC benefits on numerous occasions. At times she has argued that the death of her common law husband should make her eligible again for DIC benefits, especially because she had never formally remarried after the death of the Veteran. The numerous denial-of-benefits correspondence found in the claims file usually noted that the appellant had forfeited all rights, claims, and benefits because she deliberately presented false and fraudulent evidence to VA for the purpose of establishing entitlement to VA benefits. She was advised that there was no administrative remedy within the jurisdiction of VA for the revocation of the forfeiture declared against her. She was further advised that only new and material evidence, not previously considered, having direct bearing on the reason for the forfeiture could be considered new and material. 

In January 2003 the RO informed the appellant she had not provided new and material evidence to reopen her claim. She appealed that decision, and in May 2005 the Board found that new and material evidence had not been presented and the appellant's request to reopen the decision that declared a forfeiture of her rights to VA benefits was denied. 

In her July 2005 correspondence, the appellant claimed that she had submitted the death certificate of E.M. as evidence because her "previous husband-and-wife relationship with him" was, she thought, the primary reason for the forfeiture decision. She claimed that he led or compelled her "to present to you the false evidence in support of my claim." She said she did so without knowing this violated VA law and she thought only a valid remarriage would violate the law. 

In her October 2005 correspondence, the appellant said that "at first" she and E.M. did not live together in a family household. She said that he used to come and then go away and that when he went away it was often for months or even years. She then conceded that "the whole truth" came out after neighbors became envious of her VA benefits and she was investigated. She also explained that E.M. left her when she lost her DIC benefits in 1963 and did not return for one and one-half years when he then forced her to let him stay with his children. She also conceded that when he came back they continued to live together up to 1974.

In March 2006 correspondence, the appellant stated that she never told any VA representative "that I never had a paramour nor cohabited in a marriage-like relationship at any time." She also denied lying or providing false statements to VA "and I fully believe that I never committed the fraudulent acts documented and discussed in the [May 2005 Board] decision." 

Two affidavits executed in November 2009 from four elderly Filipinos stated that they knew that the appellant was the wife of the Veteran and that they also knew that the appellant and E.M. lived together as husband and wife from 1962 to September 1972 in Cagayan, but that they never did so after September 1972. 

In June 2010 correspondence, the appellant claimed that she left E.M. in 1962 when her benefits were terminated and she moved and then resided in Diliman, Quezon City, where she lived for ten years. He found her, though, in 1972 and frightened her by force. They stayed together for less than a week and then E.M. disappeared again. She explained that this was why she told VA she was not living with E.M. and their final separation was September 1972. She said testimony of others that she lived openly as E.M.'s wife in Cagayan until 1974 was false. 

In June 2012 correspondence, the appellant denied ever living openly with another man as husband and wife. She stated that she lived with E.M. "in a very secret manner." The appellant also claimed that she had never submitted any false and fraudulent statements for the purpose of restoring her terminated benefits. 

In her September 2012 VA Form 9, Substantive Appeal, the appellant claimed that the July 1975 forfeiture decision of the RO in Manila was not in accordance with the law because she did not knowingly and intentionally present or caused to be furnished to VA, materially false and fraudulent statements and evidence in support of her claim for benefits. She claimed that she did not mean to mislead or misrepresent when she said in October 1972, and that E.M. had never visited her since he left in 1963, as she still did not know then at the time of application whether he wanted to see her again. She also claimed that E.M. came to her boarding house between 1972 and November 1974, subsequent to the time the VA representative came. She further stated that E.M. stayed at her boarding house for less than a week and that she never submitted to him anymore. 

In the Board's September 2013 decision, in determining that new and material evidence had not been submitted since the prior May 2005 denial, the Board stated the following:

The Board finds that most of this evidence is new as these particular documents were not previously submitted to the RO. In the Board's judgment, however, these statements do not raise a reasonable possibility of substantiating the proposition that the appellant did not commit fraud in her efforts to restore her DIC benefits. Indeed, even if the appellant's individual statements were deemed credible, considered together they are contradictory and inconsistent. The fact remains that this evidence does not raise a reasonable possibility of substantiating the revocation of forfeiture claim. 

... 

In order to substantiate her claim, the appellant would have to produce new and material evidence on the issue of whether she knowingly and intentionally presented or caused to be furnished materially false statements and evidence in pursuit of VA death pension benefits. In her VA Form 9, Substantive Appeal, the appellant claims this is indeed the case, but her blanket denial in her September 2012 document does not, in the Board's judgment, raise a reasonable possibility of substantiating the proposition that the appellant did not knowingly and intentionally present or cause to be furnished materially false statements and evidence. 

In its November 2014 Memorandum Decision, the Court determined "that the Board provided an inadequate statement of reasons or bases for its determination that new and material evidence had not been submitted sufficient to reopen her claim." The Court found that "the Board erred when it found that the evidence submitted by the appellant was not new and material because 'even if the appellant's individual statements were deemed credible, considered together they are contradictory and inconsistent," as "[t]he Board provide[d] no explanation why this finding is not itself an implicit credibility determination." The Court stated that, per Justus v. Principi, 3 Vet.App. 510, 513 (1992), "the Board must presume the credibility of the appellant's statements, in which she in part claims that she did not knowingly and intentionally present fraudulent evidence to VA in October 1972 because she lacked the intent to mislead," and that "[i]f the statements are material to her claim, the Board must then reopen the appellant's claim and properly adjudicate it, at which time it is appropriate to 'analyze the credibility and probative value of the evidence.'"

In June 2015, the Board determined that "[b]ecause the Board has been instructed to credit the appellant's September 2012 statement that she lacked any intent to mislead and to reopen the claim if that statement of lack of intent is material, the Board will grant the request to reopen the claim." As the AOJ had not yet adjudicated the Veteran's claim for revocation of forfeiture on the merits, the Board remanded for it to do so, after completing any development deemed necessary. The AOJ did so in an August 2016 supplemental statement of the case.

III. Analysis

The governing statute provides that a person who knowingly makes or arranges for or procures the making of a false or fraudulent affidavit, declaration, or statement concerning any claim for benefits under any law administered by the Secretary of Veterans Affairs shall forfeit all rights, claims, and benefits under all such laws. 38 U.S.C.A. § 6103(a) (West 2014) [formerly 38 U.S.C.A. § 3503(a) (1975)]. According to the implementing regulation, fraud is any act committed when a person knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by VA (except laws relating to insurance benefits). After September 1, 1959, any person who commits fraud in the Philippine Islands forfeits all rights to benefits under all laws administered by VA, other than laws relating to insurance benefits. 38 C.F.R. § 3.901(a), (b), (d). 

In Trilles v. West, 13 Vet. App. 314 (2000) (en banc), the Court noted that an original forfeiture action is an adversarial process initiated by VA and requires the application of the beyond-a-reasonable-doubt standard to declare a forfeiture.

In this case, in light of the overwhelming evidence, the Board finds beyond a reasonable doubt that the appellant knowingly made false and fraudulent affidavits, declarations, and statements concerning her claims for VA benefits.

Even prior to the 1970s, in pursuit of a claim for VA benefits, the appellant provided sworn statements in an April 1963 deposition that she had been living for 6 years, and still lived, as a wife to E.M., that she represented E.M. as her husband, and that she was known and reputed to be his wife. Indeed, after having her DIC benefits terminated on account of her relationship to E.M., the appellant submitted a signed affidavit stating that that she was not living or staying with any man and that, since the Veteran's death, she had never held herself openly or publicly as the wife of anyone or represented any man to be her husband. This signed affidavit, and several subsequent statements from the Veteran asserting the same, directly contradict her own sworn statements in April 1963, and also those of several acquaintances and neighbors, the Veteran's brother, and E.M.; they also contradict her own subsequent sworn statements on deposition and written statements. Such statements contradicting her April 1963 testimony were, moreover, given in response to VA's termination of her DIC benefits on account of her established relationship with E.M.

Also, again, in October 1972, in response to an April 7, 1971, inquiry from VA regarding her claim for restoration of her VA benefits, the appellant stated that her common-law husband had left her sometime in 1962 when her benefits were terminated, and that since then, she had not seen him or heard about him; she responded "no" to the questions of whether she was living with anyone as if they were married, even though no ceremony was performed, on January 1, 1971, or at that time. These statements to VA regarding her status in 1971 were supported only by her November 1974 deposition responses indicating that she had lived with E.M. as husband and wife from the early 1961 or 1962 until September 1972 when their relationship ended, and E.M.'s statements on being interviewed; such statements on deposition contradict both the appellant's previously signed affidavit statements and her October 1972 statement to VA that E.M. had left her sometime in 1962, when her benefits were terminated, and that she had not seen him or heard about him since then.

Both the October 1972 response to VA's inquiry and the appellant's November 1974 testimony are also contradicted by the other depositions and interview statements given at the time, including from the appellant's daughter and several neighbors and acquaintances of the appellant, living in two separate towns that appellant had claimed to be living in at various times, as described above. 

The field examiner also made notations of obvious signs of lack of truthfulness in the appellant's and E.M.'s November 1974 statements, including that the appellant "did not appear to grasp the need to tell the truth," "wanted only to get back her pension," and "that [the appellant] often asked [the examiner], before she answered, what her answer should be." Such observations are further evidence that the appellant provided false statements to VA meant to be purposefully misleading for purposes of obtaining benefits. 

Regarding the subsequent evidence from 2005 on, as the Board stated in its September 2013 decision:

In addition, the Board notes that the new evidence received after the last prior final decision in May 2005 inconsistently states the following: that E.M. left her in 1963 and did not return for one and one-half years and then they lived together until 1974 (October 2005 statement); that she left E.M. in 1962 and moved to another area where E.M. did not find her until 10 years later when they stayed together for less than a week (June 2010 statement); and that E.M. came to her boarding house between 1972 and November 1974 and stayed for less than a week (September 2012 statement). 

Regarding the November 2009 affidavits claiming that the appellant and E.M. lived together as husband and wife from 1962 to September 1972 in Cagayan, but that they never did so after September 1972, the Board finds them not to be credible, as they are inconsistent with the overwhelming credible evidence described above. Moreover, they contradict the previous September 1964 affidavit submitted by the appellant from two acquaintances stating that the appellant had never publically or openly held E.M. out as her husband. Such contradictory affidavits submitted by the appellant simply serve to support a particular version of events given by the appellant at a particular point of time, and lack any credibility.

In short, the statements submitted by the appellant and others since 2005, inconsistent and contradictory with each other and the previous evidence of record lack any credibility, and only further serve to undermine the general credibility of the appellant. In this regard, as noted by the Board in September 2013, "[h]er September 2012 VA Form 9, in which she asks for forgiveness for having a common law husband in violation of VA regulations, and her July 2005 statement that her common law husband compelled her to present VA with the false evidence used in her claim, very clearly shows that the appellant understood that she submitted false evidence in relation to her claim."

As noted in numerous, prior VA decisions, the evidence of record shows that the appellant lived as the common law wife of a man other than the Veteran from at least the late 1950s until at least 1974. Further, it clearly, and overwhelmingly, demonstrates that that the appellant has knowingly and intentionally made numerous false and fraudulent statements for purposes of obtaining VA benefits. Thus, the Board finds that the evidence shows beyond any reasonable doubt that the appellant knowingly made false and fraudulent affidavits, declarations, and statements concerning her claims for VA benefits. Accordingly, revocation of forfeiture of eligibility for VA benefits must be denied.

The Board is grateful to the Veteran for his service, which cost him his life. The Board also regrets that, under these circumstances, a final decision could not have been reached at an earlier point. See Hill v. Shinseki, No. 11-1965, 2012 WL 3609051, at *4 (Vet. App. Aug. 23, 2012) (noting that although Justus, 3 Vet. App. 510, held that evidence must be presumed credible for purposes of determining whether a claim should be reopened, Justus applied the definition of new and material evidence set forth in Colvin v. Derwinski, 1 Vet. App. 171 (1991), which was overruled by the U.S. Court of Appeals for the Federal Circuit in Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998), and which was linked to the well-grounded claim standard, which is no longer applicable).


ORDER

Revocation of forfeiture of eligibility for VA benefits is denied.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs